UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FERPINTA S.A., FERROCAMBO, and
BREFFKA & HEHNKE Gmbh & Co KG,            08 Civ. 5536 (SHS)

                Plaintiffs,

   -against-

DELFINO MARITIME CORP.,

                Defendant.
------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND VACATE ORDER FOR ISSUANCE OF MARITIME ATTACHMENT


BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
DELFINO MARITIME CORP.
355 Lexington Avenue, 4th Floor
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

*Of Counsel:*

Peter Skoufalos

## PRELIMINARY STATEMENT

Defendant Delfino Maritime Corp. ("Defendant") submits this memorandum of law in support of its motion to dismiss the Complaint and vacate the Court's Order authorizing process of maritime attachment. Also submitted in support of this motion is the Declaration of Panagiotis Chiotelis, Esq., a Greek attorney who represented Defendant throughout the period in which the current dispute arose.

Plaintiffs' action seeks security for a purported claim for saltwater damage to a cargo of steel bars transported aboard Defendant's vessel from Turkey to southeastern Africa. Plaintiffs, however, lack a valid maritime claim upon which to base their Rule B attachment. In fact, Plaintiffs waived the very claim which is the subject of this action in an agreement between the parties reached in October-November 2007. In the absence of a valid maritime claim, the Complaint must be dismissed and the *ex parte* Order of attachment must be vacated.

## FACTUAL BACKGROUND[1]

Plaintiffs commenced this action on June 19, 2008 by filing a Verified Complaint, which included a prayer for issuance of Process of Maritime Attachment in the amount of $422,773.36. This Court issued an *ex parte* Order of attachment on the same day. On or about July 2, 2008, an electronic funds transfer in the amount of $277,222.55 was attached pursuant to the Court's Order as it passed through Deutsche Bank in New York.

This action arises out of the transport of approximately 3,003 metric tons of steel bars ("the Cargo") aboard the M/V MICHAIL M ("the Vessel") from Nemrut, Turkey to Beira,

---

[1] The following facts are largely derived from the Chiotelis Declaration, submitted in support of Defendant's motion (hereinafter "Chiotelis Decl."). As described in his declaration, Mr. Chiotelis was retained by Defendant to act on its behalf as the events underlying this matter were unfolding from October 2007 through February 2008. Mr. Chiotelis also negotiated directly with Plaintiffs' counsel regarding the compromise agreement reached in October 2007. Mr. Chiotelis, therefore, has personal knowledge of and direct involvement in the critical facts underlying this dispute.

Mozambique. In April 2007, Defendant issued Bill of Lading No. 1, dated April 20, 2007, reflecting the Cargo quantity and listing Plaintiff Ferrocambo as the party to notify upon the Cargo's arrival in Mozambique. [Chiotelis Decl. ¶ 6; Ex. "A"].

On or about, May 7, 2007, while *en route* to the discharge port in Africa, the Vessel became stranded in the Dardanelles. The Vessel was later refloated with the assistance of tugboats, and repairs were made thereafter. The Vessel completed the voyage and arrived in Beira on October 29, 2007.

Defendant declared General Average as a result of the incident and made a demand that Plaintiffs share in the expenses incurred in saving the venture, including the cost of hiring tugboats and repairs to the Vessel. [Id. ¶¶ 7-8]. Plaintiffs, on the other hand, claimed that condensation in the hold would likely result in atmospheric rust on the Cargo due to the prolonged voyage.

With both parties now asserting claims (i.e. Defendant's claim against the Plaintiffs for General Average contribution and Plaintiffs' claims against Defendant for alleged cargo damage), the parties entered into a Settlement Agreement on or about October 26, 2007. In that agreement, Defendant agreed to waive and forego its claim against Plaintiffs for their contribution to General Average. In exchange, Plaintiffs agreed to waive "all and any rights, etc." and claims arising from the Vessel's late arrival in Beira, as well as any claims for damage to the Cargo arising from "atmospheric rust." [Id., ¶ 9; Ex. "B"].

At the discharge port, the parties conducted their own surveys of the Cargo. Plaintiffs' survey claimed that the Cargo was coated with rust, and further concluded that the cause of the rust was salt water having come into contact with the Cargo. In contrast, Defendant conducted its own survey at the discharge port which concluded that (i) there was no salt water present in

the Vessel's holds; (ii) any rust was caused by freshwater condensation in the holds; and, (iii) the Cargo could be easily reconditioned at relatively little cost. [Id., ¶¶ 10-11; Ex. "C"].

In an effort to resolve the conflicting conclusions of the parties' individual surveyors, the parties agreed to appoint an independent and neutral third-party surveyor to determine the presence of saltwater in the Vessel's holds that would be final and binding on the parties. This agreement is reflected in an exchange of facsimile messages from October 31, 2007 through November 16, 2007 between Mr. Chiotelis and Clyde & Co., attorneys for the Plaintiffs. [Chiotelis Decl. ¶ 13, Ex. "D"]

In those exchanges, Plaintiffs and Defendant agreed that a joint survey would be conducted by SGS Mocambique Lda. ("the SGS Survey"), and that the results of that survey would be final and binding on both parties as to the cause of the rust on the Cargo. [Id., ¶ 15; Ex. "D-20"]. By email dated November 7, 2007, plaintiff Ferpinta confirmed that "cargo owners are agreeable to a third survey on the cargo to be done by independent surveyors, SGS." [Id., ¶ 17; Ex. "D-14"], and further agreed have SGS Mocambique Lda. conduct the joint survey [Id., ¶ 17; Ex. "D-19"].

By fax dated November 13, 2007, Mr. Chiotelis confirmed to Plaintiffs' attorneys that the independent surveyor would be instructed that it was the "consensus" of the parties that the surveyor's "findings will be final and binding." [Id., ¶ 15; Ex. "D-20"]. Plaintiffs' counsel on that same date, November 13, 2007, acknowledged Mr. Chiotelis's correspondence and requested that the SGS surveyor be given additional specific instructions. [Id., ¶ 17; Ex. "D-21"]. The parties also agreed to share equally in the cost of the SGS Survey [Id., ¶ 18; Ex. "E"].

SGS conducted its joint survey of the Cargo at the discharge port on November 22, 2007. The SGS surveyor tested for the presence of salt water residue on the discharged cargo, on cargo

4

still aboard the Vessel, and on the cargo hold tank top platings. These tests failed to reveal the presence of salt water residue. Consequently, the SGS Survey concluded that "<u>the current condition of the cargo may be attributed to the effects of cumulative climatic variance and not as a result of any sea water ingress on board the vessel.</u>" [Id., ¶ 19; Ex. "F"] *(emphasis added)*.

**ARGUMENT**

**THE COMPLAINT SHOULD BE DISMISSED AND THE ATTACHMENT
VACATED BECAUSE PLAINTIFFS LACK A VALID MARITIME
CLAIM UPON WHICH TO BASE THEIR ATTACHMENT**

In *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006), the Court of Appeals held that the plaintiff must possess a "valid prima facie admiralty claim against the defendant" in addition to meeting the technical filing and service requirements of Supplemental Rule B. *Id.* at 445. In the present case, the Chiotelis Declaration and the exhibits annexed thereto leave little doubt that Plaintiffs cannot satisfy this essential condition of a Rule B attachment and will be unable to discharge their burden in the context of Defendant's Supplemental Rule E(4)(f) application.

Moreover, dismissal of the Complaint pursuant to Rule 12(b)(6) is warranted here because there is overwhelming evidence that Plaintiffs will be unable to overcome the defense of waiver.

    a.    <u>**Plaintiffs' Burden under Rule E(4)**</u>:

Once property is attached under Rule B, "a plaintiff shall be required to show why the . . . attachment should not be vacated or other relief granted consistent with these rules." Supplemental Rule E(4)(f). At all times during the Rule E(4)(f) hearing, plaintiffs, as the parties obtaining the attachment, have "the burden of showing that the attachment should not be vacated" at the hearing. *Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS*, 409 F. Supp. 2d

5

316, 318 (S.D.N.Y. 2005); *Bay Casino, LLC v. MN ROYAL EMPRESS,* 5 F. Supp. 2d 113, 125 (E.D.N.Y. 1998); *Ullises Shipping Corp. v. FAL Shipping Co. Ltd.,* 415 F. Supp. 2d 318 (S.D.N.Y. 2006).

The Rule provides that "any person claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated . . . ." Local Admiralty Rule E.1 provides that such a hearing shall be held within three (3) court days, unless otherwise ordered." The challenge that can be asserted by a defendant in a Rule E(4)(f) is extensive. At this post-attachment hearing, a defendant can attack the sufficiency of the "complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Supp. R. E(4)(f) Advisory Committee Note (1985 amendment).

Rule E itself does not specify what form the post-attachment hearing must follow, and the nature and scope of the hearing depend upon the issues in controversy. *Salazar v. M/V ATLANTIC SUN,* 881 F.2d 73, 79 (3d Cir. 1989); *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.,* 169 F. Supp. 2d 1341, 1357 (M.D. Fla. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff . . . to show why the attachment should not be vacated"). In fact, "a court may also consider any allegations or evidence offered in the parties' papers or at any post-attachment hearing." *Maersk, Inc. v. Neewra, Inc.,* 443 F.Supp 2d 519, 527 (S.D.N.Y. 2006). *See also Linea Naviera de Cabotaje,* 169 F. Supp. 2d at 1358 (court's review of "whether reasonable grounds exist for the attachment is not limited to allegations of the Complaint.")

6

Finally, a district court has discretion to review the relative equities of the parties in determining whether to uphold a maritime attachment. *Greenwich Marine, Inc. v. SS Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965); *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, 2005 U.S. Dist. LEXIS 19876, at *6 (S.D.N.Y. 2005). Under this inherent power, a district court may vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff. *Sea Transp. Contractors, Ltd. v. Indus. Chem. du Senegal*, 411 F. Supp. 2d 386, 391 (S.D.N.Y. 2006).

b.  **Standard on a Rule 12 Motion:**

Rule 12(b)(6) provides for dismissal of a complaint where the plaintiff fails to state a cause of action. Such a motion can accompany an application for vacatur of a maritime attachment where, as here, dismissal of the complaint is also sought. *See Chiquita International Ltd. v. Bosse shipping Ltd.*, 518 F.Supp. 2d 589, 596 (S.D.N.Y. 2007). The Court may grant such a motion if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. Clark*, 355 U.S. 41, 45-46 (1957). Moreover, in a motion to dismiss, "[a] valid affirmative defense defeats even a well-pleaded complaint." *In re September 11 Prop. Damage and Business Loss Litig.*, 481 F. Supp. 2d 253, 258 (S.D.N.Y. 2007) (*remanded on other grounds*).

As this Court has held previously, a plaintiff's voluntary waiver of a claim can form the basis for a motion to dismiss under Rule 12(b)(6). *Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 359 (S.D.N.Y. 1999) (Stein, J.) (dismissing complaint based on plaintiff's waiver of claim in settlement agreement). While the grounds for a motion to dismiss generally must be found within the complaint, the court may also "consider documents attached to the complaint as exhibits or incorporated in it by reference." *Id.* Courts in this district will consider waivers not

7

included in the pleadings. *See Jacobs v. New York City Fin. Ctr. Hotel*, 96 Civ. 7088, 1997 U.S. Dist. LEXIS 9704 (S.D.N.Y. July 7, 1997); *see also Baba v. Warren Mgmt. Consultants*, 882 F. Supp. 339, 343 (S.D.N.Y. 1995) (considering waiver of claims in Rule 12(b)(6) motion converted into motion for summary judgment).

    c.    **The Complaint Fails to State a Valid Maritime Claim:**

The Complaint on which the Rule B attachment has issued in this case contains one cause of action for alleged salt water damage to the Cargo.[2] This claim, however, is expressly precluded by the parties' prior agreement wherein they agreed to be bound by the findings of an independent SGS surveyor that they retained jointly. That survey concluded that there was no salt water damage to the Cargo. Plaintiffs, therefore, have waived any claim for salt water damage and cannot allege a valid maritime claim upon which process of maritime attachment can be issued in this action.

The facts underlying Defendant's defense of waiver are marshaled in the Chiotelis Declaration in support of Defendant's motion and are summarized above. These facts are not seriously in dispute because they are corroborated by the parties' own contemporaneous correspondence and the findings of the SGS surveyor. Further, Mr. Chiotelis has first-hand knowledge of these facts as he was negotiating directly with Plaintiffs' counsel as the Vessel discharged the Cargo in Mozambique.

Here, Plaintiffs' agreed that the findings of the independent surveying company, SGS Mocambique Lda., would be final and binding on the parties as to a determination of the presence of salt water. [Chiotelis Decl. ¶ 16, Ex. "D-20"]. Attorneys representing the Plaintiffs at the time accepted this condition and, in fact, proposed additional conditions [Id. ¶ 17, Ex. "D-21"], which were accepted by Defendant [Id. ¶ 18, Ex. "E"]. An agreement was thus reached to

---

[2] Complaint, ¶ 8: "the cargo of steel bars was off loaded . . . with significant salt water damage."

8

resolve the parties' conflicting assertions concerning the cause of damage to the Cargo [Id. ¶¶ 9 - 13].[3] There is no dispute between the parties as to the conclusion of the independent surveyor: "no sea water ingress had occurred into the vessel's holds." [Id. ¶ 19, Ex. "F" at 5].

In *OGI Oceangate Transportation Co. Ltd. v. Logistics Pvt. Ltd.*, 2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007), the court considered whether a prior settlement agreement of the parties barred the plaintiff's claim for breach of a charterparty contract. Finding that the plaintiff's claim was precluded by the parties' agreement, the court held that the plaintiff's waiver deprived it of "a valid prima facie claim for breach of the charter party," and vacated the attachment. Here, similarly, the parties' settlement and agreement to be bound by the findings of the SGS surveyor precludes Plaintiffs' claim for salt water damage.

## CONCLUSION

Plaintiffs' Complaint should be dismissed, with prejudice. In addition, the ex parte Order of maritime attachment issued in this action on June 19, 2008 should be vacated and all funds attached pursuant thereto should be immediately released.

BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
DELFINO MARITIME CORP.

Peter Skoufalos (PS-0105)
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

---

[3] Prior to reaching the agreement to retain the independent surveyor in Mozambique, Plaintiffs had waived "all and any rights, claims etc that may have against the owners and/or the managers of the vessel which arise solely from the delay incurred in the delivery of the cargo to Beira," and all claims for damage caused by "reasonable atmospheric rust."