BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
DELFINO MARITIME CORP.
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

FERPINTA S.A., FERROCAMBO, and
BREFFKA & HEHNKE Gmbh & Co KG,                          08 Civ. 5536 (SHS)

                              Plaintiffs,

                                                        **DECLARATION OF**
          -against-                                     **PANAGIOTIS CHIOTELIS**

DELFINO MARITIME CORP.,

                              Defendant.
-------------------------------------------------------X

       I, PANAGIOTIS CHIOTELIS, pursuant to Section 1746 of Title 28 of the United States

Code, hereby declare and say the following under penalty of perjury:

       1.     I am a resident of Piraeus, Greece, and a practicing attorney admitted to the bar of

Piraeus, Greece. I am also qualified as a solicitor in England and Wales. I maintain an office

(Chiotelis & Co.) for the practice of law at 5 Sachtouri Street, Piraeus, Greece. I make this

declaration in support of the motion of the defendant DELFINO MARITIME CORP.

("Defendant") to dismiss the Complaint and to vacate the Order of Maritime Attachment issued

by this Honorable Court in this matter on 19 June 2008.

       2.     Defendant seeks dismissal of the Verified Complaint because Plaintiffs' claim, as

alleged therein, has been compromised and waived and is now precluded. Consequently, this

claim should not be permitted as a basis for an attachment of Defendant's property.



3.    I am fully familiar with the facts of this matter, as I was retained by Defendant to act on its behalf as the events underlying this matter were unfolding from October 2007 through February 2008. I base this declaration, therefore, on my personal knowledge and on documents I have reviewed and which are maintained in my office as part of my file on this matter. I am also familiar with the proceedings before this Honorable Court, and have reviewed the docket report on this matter and the Verified Complaint filed by the Plaintiffs.

4.    As counsel for Defendant, I negotiated directly with Plaintiffs' counsel, the London office of Clyde & Co., regarding the cause of suspected damage to a cargo of corrugated reinforcement round bars (essentially a steel cargo) (hereinafter "the Cargo") being transported aboard the M/V MICHAIL M ("the Vessel") from Nemrut, Turkey to Beira, Mozambique, in late October 2007.

5.    At all relevant times, Defendant was the registered owner of the Vessel.

6.    On or about 20 April 2007, approximately 3,003 metric tons of the Cargo was loaded aboard the Vessel in Turkey. Bill of Lading No. 1, dated 20 April 2007, was issued by Defendant reflecting the Cargo quantity and listing Plaintiff Ferrocambo as the party to notify upon the Cargo's arrival in Mozambique. Annexed hereto as Exhibit "A" is a copy of the said Bill of Lading.

7.    On or about, 7 May 2007, while *en route* to the discharge port in Africa, the Vessel became stranded in the Dardanelles. The Vessel was refloated with the assistance of tugboats on or about 7 May 2007, with repairs affected thereafter. The Vessel completed the voyage and arrived in Beira on 29 October 2007.

8.    As a result of the grounding, Defendants declared General Average. Briefly, General Average is a maritime principle requiring each cargo owner to pay a portion of the cost

2

of rescuing a ship (and the cargo on board) from a peril. In this case, Defendant was entitled to assert a claim for General Average against Plaintiffs for Plaintiffs' share of the expenses incurred in saving the venture, including the cost of hiring tugboats and for repairs to the Vessel.

9.    In order to resolve the parties' respective claims (i.e. Defendant's claim against the Plaintiffs for General Average contribution and the Plaintiffs' claims against Defendant for alleged cargo damage), the parties entered into a Settlement Agreement on or about 26 October 2007. In that agreement, Defendant agreed to waive and forego its claim against Plaintiffs for their contribution to General Average. In exchange, Plaintiffs agreed to waive and forego all claims caused by the delay in delivering the Cargo to Beira, including claims for damage due to atmospheric rust. Plaintiffs, however, reserved their right to claim damages for salt water contamination. A copy of the Settlement Agreement dated 26 October 2007 is attached hereto as Exhibit "B".

10.    At the discharge port, Plaintiffs, as the receivers of the Cargo, claimed that the Cargo was coated with rust. Plaintiffs also contended that their surveyor had concluded that the cause of the rust was salt water, and that the salt water rust would continue to corrode the Cargo and render it unmarketable.

11.    Defendant conducted its own survey at the discharge port. That survey concluded that (i) there was no salt water present in the Vessel's holds; (ii) any rust was caused by freshwater condensation in the holds; and, (iii) the Cargo could be easily reconditioned at relatively little cost. The survey report of Herbert Nkomo of RM de Gruyter & Cia. Lda is annexed hereto as Exhibit "C".

12.    In light of the parties' conflicting surveys concerning the possibility of salt water contamination, the parties agreed to appoint an independent and neutral third-party surveyor to

3

make a determination as to the presence of saltwater in the Vessel's holds that would be final and binding on the parties.

13.    This agreement is reflected in an exchange of facsimile messages between my office and Clyde & Co. from October 31, 2007 through November 16, 2007. In those exchanges, Plaintiffs and Defendant agreed that a joint survey would be conducted by SGS Mocambique Lda. ("the SGS Survey"), and that the results of that survey would be final and binding on both parties as to the cause of the rust on the Cargo. The correspondence between counsel for Plaintiffs and Defendant agreeing to the SGS Survey is attached hereto as Exhibit "D".

14.    It is clear from this exchange, and from Clyde & Co.'s own words, that Plaintiffs' claim at this point in time was limited "only to a claim relating to saltwater contamination" to the Cargo. Please see the fax dated 6 November 2007 of Clyde & Co., labeled as "D-6" in Exhibit "D" annexed hereto.

15.    Initially, there was some disagreement between counsel for the parties as to which company would act as an independent surveyor at the discharge port. However, by email dated 7 November 2007, plaintiff Ferpinta confirmed that "cargo owners are agreeable to a third survey on the cargo to be done by independent surveyors, SGS." Please see the email dated 7 November 2007 from Jai Sharma to representatives of the Defendant, labeled as "D-14" in Exhibit "D" annexed hereto. Also, by fax dated 13 November 2007, Clyde & Co., on behalf of the Plaintiffs, confirmed Plaintiffs' agreement to have SGS Mocambique Lda. conduct the joint survey. Please see the fax dated 13 November 2007 of Clyde & Co., labeled as "D-19" in Exhibit "D" annexed hereto.

16.    The proposal for a joint survey that would be final and binding on the parties was made in my fax to Clyde & Co. dated 13 November 2007. In that correspondence, I specifically

confirmed that the independent surveyor would be instructed that it was the "consensus" of the parties that the surveyor's "findings will be final and binding." Please see my fax dated 13 November 2007 to Clyde & Co., labeled as "D-20" in Exhibit "D" annexed hereto.

17.     Clyde & Co. responded to my fax on that same date (i.e. 13 November 2007), confirming the parties' agreement to retain the SGS surveyor as outlined in my correspondence, and requesting that the SGS surveyor be given various additional specific instructions. However, at no time did Clyde & Co. take exception, or reserve its position, regarding the final and binding nature of the SGS Survey. Please see the Clyde & Co. fax dated 13 November 2007, labeled as "D-21" in Exhibit "D" annexed hereto.

18.     In fact, on 14 November 2007, written instructions, including the instructions specifically requested by Plaintiffs, were sent to the SGS surveyor. Defendant's 14 November correspondence to the SGS surveyor is annexed hereto as Exhibit "E".

19.     SGS surveyed the cargo at the discharge port on 22 November 2007. The SGS surveyor tested for the presence of salt water residue on the discharged cargo, on cargo still aboard the Vessel, and on the cargo hold tank top platings. These tests failed to reveal the presence of salt water residue. The SGS Survey concluded that "the current condition of the cargo may be attributed to the effects of cumulative climatic variance and not as a result of any sea water ingress on board the vessel." The SGS Survey dated 29 February 2008 is annexed hereto as Exhibit "F".

20.     The parties agreed to share equally in the cost of the SGS Survey. SGS's invoice to the Defendant for 50% of the costs of the joint survey is attached hereto as Exhibit "G."

21.     Given the conclusive findings made in the SGS Survey, it is not surprising that Plaintiffs have not seen it fit to begin arbitration or litigation on the substantive dispute. I

5



suspect that, despite Plaintiffs' allegation that they are "preparing to commence legal proceedings against the Defendant," Plaintiffs will not commence such proceedings because they fear that their claim will be knocked out summarily. The current maritime attachment is, therefore, nothing more than an effort to sidestep the Plaintiffs' previous waiver and release of any claims for saltwater damage, and to try to strong-arm Defendant into a settlement.

22.    The indisputable facts of this matter, as established by the attachments to my declaration, demonstrate that Plaintiffs do not have a valid maritime claim with which to support a maritime attachment of the Defendant's property in this case.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Piraeus, Greece
       July 11, 2008

PANAGIOTIS CHIOTELIS
ATTORNEY AT LAW
5 SACHTOURI STR. PIRAEUS 18536
TAX IDENTITY No: 116030142
TAX AUTHORITY A' PIRAEUS
TEL: +30210 4294028
FAX: +30 210 4294548 Mobile: +30 6974111593

PANAGIOTIS CHIOTELIS

6

# EXHIBIT "A"

Page 2

## "BILL OF LADING"

B/L No.    1

CARRIER : DELFINO MARITIME CORP.MAJURO, MARSHALL ISLAND

Reference No.

| Consigned to order of | Notify address |
|---|---|
| TO THE ORDER OF<br>BANCO COMERCIAL E DE INVESTIMENTOS,<br>SARL MAPUTO | FERROMOCAMBIQUE - COMERCIO E<br>INDUSTRIA DE FERNANDO PINHO<br>TEIXEIRA, LDA. ESTRADA NAC. NO.1,<br>KM 14, MAPUTO - MOZAMBIQUE |

Shipper :

CAGCELIK DEMIR VE CELIK END. A.S.
DES SAN. SIT. 106. SOK. B BLOK NO:12
DUDULLU - ISTANBUL TURKEY

ORIGINAL

| Vessel | Port of loading | Port of discharge |
|---|---|---|
| M/V MICHAIL M | NEMRUT PORT, TURKEY | BEIRA PORT - MOZAMBIQUE |

Shipper's description of packages and contents

PRIME QUALITY REINFORCEMENT STEEL BARS

| | NUMBER OF BUNDLES | QUANTITY (TONS) |
|---|---|---|
| LOT A | 1.246 | 2.506,500 |
| LOT B | 248 | 497,200 |

TOTAL NUMBER OF BUNDLES :1.494
TOTAL QUANTITY : 3.003,700 TONS

CLEAN ON BOARD
20.04.2007

DOCUMENTARY CREDIT NUMBER CDI0710112

İDÇ DENİZNILK
SANAYİ ve TİCARET A.Ş.

(of which............................NONE..........................on deck at Shippers' risk;
the Carrier not being responsible for loss or damage howsoever arising)

| Freight payable at | SHIPPED on board in apparent good order and condition for carriage to the port of |
|---|---|
| "FREIGHT PREPAID" | discharge or so near thereunto as the Vessel may safely get the above mentioned goods |
| | which are to be delivered in the like good order and condition at the aforesaid port of |
| | of discharge unto Consignees or their Assigns, they paying freight as per note on the |
| | margin plus other expences incurred in accordance with the provisions contained in this |
| | Bill of Lading, whether written or printed, to which provisions the Shippers or Receivers |
| | expressly agree in accpting this Bill of lading.Otherwise subject to the terms and |
| | conditions stated overleaf. |

| Freight Advance. | Weight, measure, quality, quentity, condition, contents and value unknown. |
| Received on account of freight: | IN WITNESS whereof the Master or Agent of the said Vessel has signed the number of |
| | original Bills of Lading stated below, all of this tenor and date, one of which being accomp- |
| | lished the others to be void |

| Number of<br>Original Bs/L. | Place of issue | Date of issue |
|---|---|---|
| 3/Three | İZMİR | 20.04.2007 |

Signed by for and on behalf of the master YURY CHAKHRACH
as agent only

İDÇ DENİZCILIK
SANAYİ ve TİCARET A.Ş.

# BILL OF LADING

## CONDITIONS

Uniform Bill of Lading Clauses 1946
approved by
The Documentary Council of The Baltic and International Maritime Conference.
Code Name: " CONBILL"

**1 Responsibility**
The Carrier is to be responsible for loss or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods ( unless stowage performed by Shippers or their Stevedores or Servants ) or by personal want of due diligence on the part of the Carrier or his Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Carrier or his Manager.

And the Carrier is responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or Crew or some other person employed by the Carrier on board or whom for whose acts he would but for this clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at anytime whatsoever.

Damage caused by the contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even in fact so caused

**2 Deviation**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without Pilot, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property, and also in accordance with the clauses relating to Quarantine, Lock-outs, Strikes, Ice and War.

**3 Delivery**
Goods to be taken from the Vessel by Receivers directly they come to hand in discharging the Vessel and the Carrier's responsibility to cease package by package immediately the goods leave all the Vessel's deck or tackle if not thus taken from alongside by Receivers they may be landed and deposited at the expense of the Owners of the goods and at their risk of fire, loss or injury, on the dock or in the warehouse, or in craft, the Port Authorities being hereby authorized to grant a general order for the discharge immediately after the entry of the Vessel.

**4 Lien**
The Carrier has a lien on all goods for payment of freight, deadfreight and difference in freight, and for any expenses incurred before or after shipment, including demurrage, cost of repairs, if any, and forwarding expenses, fines, damages and expenses mentioned in this Bill of Lading.

The Carrier shall also be entitled to fall back on the shipper for the difference between the total amount owing to the Carrier and the net proceeds of the goods.

**5 Live animals**
Live animals shipped hereunder are received are received, kept, carried and discharged at the sole risk of the Owner thereof, and the Carrier shall not under any circumstances of any kind whatsoever be liable for any loss of or damage or delay thereto whether or not such loss damage or delay may be due to the wrongful act, neglect or default of the Carrier or the Master, Pilot, Officers, Crew, Stevedores, Servant, Agent, or other person whomsoever for whom the Carrier may be responsible, whether in the service of the Carrier or not, and whether or not the abovenamed Vessel or any other vessel or craft in which the said animals may be loaded was unseaworthy at the time of loading or sailing or at any other time.

**6 Average**
General Average to be settled according to York-Antwerp Rules, 1974; Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Carrier's Servants, The Shippers, Consignees and Owners of the goods expressly renounce the Netherlands Commercial Code, Art., 700, and the Belgian Commercial Code, Part II, Art. 148.

**7 Amended Jason Clause**
In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever whether due to negligence or not, for which or for the consequences of which the Carrier is not responsible by statute, contract, or otherwise, the cargo, Shippers, Consignees or Owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving ship or ships belong to strangers.

**8 Both-to-Blame Collision Clause**
If the Vessel comes into collision, with another ship as a result of the negligence of the other ship at any act, neglect or default of the Master, Mariner, Pilots or the Servants of the Carrier in the navigation or in the management of the Vessel, the Owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other non-carrying ship or her Owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said cargo, paid or payable by the other non-carrying ship or her Owners to the Owners of said cargo and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the Owner, operators or those in charge of any ship or ships objects other than or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

**9 Payment of Freight**
Full freight has to be paid on cargo damaged or diminished by leakage. For any increase in weight owing to sea damage no freight has to be paid.

Freight payable at port of destination, together with all other amounts mentioned in the Lien Clause, is to be paid on delivery of the goods in cash without deduction and in the currency named in the Bill of Lading, or at the option of the Receivers in the currency of the country at the highest rate of exchange for banker's sight bills current on the day when the Vessel is entered at the customhouse.

Freight payable in advance cannot be reclaimed even if the Vessel and/or cargo should be lost. In calculating General Average contribution, freight payable in advance has to be added to the value of the goods.

**10. Limitation of Liability.**
In case of any loss or damage to or in connection with goods exceeding in actual value £ 100, per package, or in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be per package or per unit, on which basis the freight is adjusted and the Carrier's liability if any, shall be determined on the basis of a value of £ 100, per package or per customary freight unit, or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than £ 100 shall have been declared in writing by the Shipper upon delivery to the Carrier and inserted in this Bill of Lading and extra freight paid if required and in such case if the actual value of the goods per package or per customary freight unit shall exceed such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his Agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in the Bill of Lading. If the loss or damage is not apparent the notice must be given within three days of the delivery. In any event the Carrier and the Vessel shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after the delivery of the goods or the date when the goods or the date when the goods should have been delivered.

Any dispute arising under this Bill of Lading to be decided according to the law of Vessel's flag.

**11 Quarantine, Lock-Outs, Strikes and Ice**
If on account of actual or threatened quarantine, ice, strikes, lock-outs, or reasons of a similar nature, the Master at any time is in doubt as to whether he can safely reach or enter the port of destination, there discharge in the usual matter, or proceed thence on his voyage unmolested, he is at liberty to discharge the goods at another port which he may consider safe. Such discharge shall be deemed to be in fulfilment of the contract voyage and freight shall be payable accordingly. Receivers and/or Shippers to be informed, if possible, and be liable for all extra expenses thereby incurred

**12 War**
(A) If the nation under whose flag the Vessel sails be engaged in war, hostilities or warlike operations or be involved in civil war or revolution hereby the safe navigation of the Vessel may be endangered the cargo loaded shall be discharged at the port of loading

(B) If owing to or during any war, hostilities, warlike operations, civil war or revolution any cargo loaded under this Bill of Lading become, or be declared to be, contraband, whether absolute or conditional, or liable to confiscation or detention such cargo shall be discharged at the port of loading.

The discharge of any cargo effected at the port of loading shall be at Shippers' risk and expense, the contract of carriage thereupon being at an end so far as such cargo is concerned. The Carrier shall have the right to load other cargo in place of cargo discharged.

If, after the Vessel has left port of loading, any port of discharge named in this Bill of Lading be, or be declared to be, blockaded, or if owing to any of the matters mentioned in sub-clauses 1 (A) and (B) entry to any such port of discharge of cargo intended for any such port be in the Master's discretion dangerous or be prohibited, or it be found in the Master's discretion dangerous or impossible for the vessel to reach or remain at any such port, the cargo or such part of it as may be affected shall be discharged at such safe port which the vessel may call at or would pass in the ordinary course of the contract voyage as may be nominated by the Shippers within 48 hours after receiving the Carrier's request for nomination of a substitute discharging port or at such safe port as the Master may decide on should the Shippers fail to make nomination.

3. The Vessel shall have liberty to comply with any orders or direction as to departure, arrival, routes, ports of call, stoppages, destination, discharge or in any other wise whatsoever given by the government of the nation under whose flag the Vessel sails or other government or any person ( or body) acting or purporting to act with the authority of such government or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such orders or directions. If by reason of in compliance with any such orders or directions anything is done or is not done it shall not be deemed a deviation.

4. The discharge of any cargo or other than the loading port under the provisions of sub-clause 2 and for the conclusion of the adventure consequent upon compliance with any orders or directions referred to in sub-clause 3 whether the cargo be discharged or not, shall be deemed to be in fulfilment of the contract voyage and freight shall be payable accordingly. All extra expenses in consequence thereof shall be paid by the Shippers or Owners of the cargo, the Carrier having a lien on the cargo for freight and all expenses incurred by him whether for discharge or otherwise.

**13 General Paramount Clause**
This Bill of Lading shall have effect subject to provisions of any legislation relating to the carriage of goods by sea which incorporates the rules relating to Bills of Lading contained in the International Convention, dated Brussels 25th August, 1924 and which is compulsorily applicable to the contract of carriage herein contained. Such legislation shall be deemed to be incorporated herein, but nothing herein contained shall be deemed surrender by the Carrier of any. If the rights or immunities or an increase of any of its responsibilities or liabilities there under. If any term of this Bill of Lading be repugnant to any extent to any legislation by this clause incorporated, such term shall be void to that extent but no further. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory protection or exemption from, or limitation of, liability

**14 Shipments**: Between ports in Denmark, Finland, Norway and Sweden.
Where Par. 122 of the Danish, Finnish, Norwegian and Swedish Maritime Laws apply the Carrier is considered to have taken all such reservation as to the liability and responsibility as he is allowed to do by the sections 122 and 123 of the said acts

ADDITIONAL CLAUSES :

# EXHIBIT "B"

## SETTLEMENT AGREEMENT

Today, 26th of October 2007, between

A) Sea Wind Maritime S.A. a company incorporated in the Republic of Liberia, hereinafter called "the managers"

B) Delfino Maritime Corp, a company incorporated in the Republic of Marshall Islands, hereinafter called "the shipowners".

AND

FERROMOCAMBIQUE - COMERCIO E INDUSTRIA DE FERNANDO PINHO TEIXEIRA, LDA , hereinafter called "the receivers"

It is mutually agreed as follows:

## I] RECITALS

The shipowners are the lawful owners of M/V MICHAIL M, GRT/NRT 2811/1622 of St Kitts & Nevis Registry. The managers are managing the said vessel. Pursuant to a C/P dd 12 April 2007, it was agreed that the vessel will carry minimum 3,008.70 mt of DBARS in Bundles 12 METRS STW/DWT. The said cargo was duly loaded on the vessel on 20 April 2007 and Bills of Lading were issued. Receivers/consignees in the Bill of lading appear to be FERROMOCAMBIQUE - COMERCIO E INDUSTRIA DE FERNANDO PINHO TEIXEIRA, LDA, ESTRADA NAC NO1 KM 14 MAPUTO MAZAMBIQUE.

During the voyage from Istanbul to Beira the vessel stranded and General Average was declared. The vessel recovered from the incident and is now en route to Beira after a long delay with ETA 28 October 2007. Due to the mutual potential claims of all the parties concerned, the parties wish to settle all their differences arising from this delay and **the General Average liabilities of the cargo interests**, in accordance with the terms and conditions of this Agreement.

## II] THE SETTLEMENT

The OWNERS/ MANAGERS waive all and any rights and claims whatsoever including but not limited to their right to claim General Average contribution on the cargo from any lawful receiver/consignee of the cargo as this cargo is described in the cargo manifest dated 20-4-2007 and the relevant Bill of Lading of the same date.

SEA WIND MARITIME COMPANY S.A.
KAYDIAAKH ETAIPIA-N269/67
ΥΑΡΙΘΜΟΥ ΓΕΜΗΟΗ-ΓΕΝΙΚΟΥ ΑΡ. 169 66
A&M 09973534 - A.Ф.М DOH ΠΕΙΡΑΑ
ΤΗΛ 4296256 -7

DELFINO MARITIME CORP
REPUBLIC OF THE
MARSHALL ISLANDS

JAY SHARMA
FOR + on Behalf of ATLASIAN MARITIME + AVIATION SERVICES AS AGENTS FOR FERPINTO FORmo/RZ

In return the receivers agree to waive all and any rights, claims etc that may have against the owners and/or the managers of the vessel which arise solely from the delay incurred in the delivery of the cargo to Beira. This waiver of rights does not include claims or rights that the receivers may have against the owners and/or managers of the vessel due to the deterioration of the quality of the cargo or loss or damage to the cargo. The receivers do though accept that the cargo being in the holds of the vessel for almost 6 months will bear reasonable atmospheric rust and will not raise any claim about it as long as this is cleared by the owners on delivery via water blasting.

## III] WARRANTIES

The receivers warrant that they are the lawful consignees and holders of the issued Bills of lading and that the said Bills have not been endorsed to any other third party.

If however such endorsement has taken place, the Receivers warrant that they will incorporate the terms of this Settlement Agreement to the new endorsee.

## IV] WAIVER AND ENTIRE AGREEMENT

Failure by either party to exercise any right or remedy under this Agreement will not constitute a waiver of that party's rights or remedies.

This Agreement is the parties' entire understanding of the settlement contract between them and supersedes all prior agreements representations and proposals, oral or written.

In entering this Agreement none of the parties has relied upon any representations or warranty or undertaking, which is not contained in this Agreement or any document referred to in it.

## V] NOTICES

Notices under this agreement will only be valid if sent to
For the owners/managers to CHIOTELIS & CO FAX + 30 210 42 94 948
Attention takis Chiotelis
For the receivers to Ferpinta, S.A. FAX + 351 256 411 426 Attention Nuno Pires

## VI] SEVERABILITY

If any provision of this Agreement is held by any competent authority to be invalid or unenforceable in whole or in part the validity of all other provisions

SEA WIND MARITIME COMPANY S.A
NAYTIAIAKH ETAIPIA N. 89167
ΧΑΡΙΛΑΟΥ ΤΡΙΚΟΥΠΗ & ΚΕΡΑΣΑΙ 165 36
ΑΦΜ 099733374 - Δ.Ο.Υ. ΠΛΟΙΩΝ ΠΕΙΡΑΙ
ΤΗΛ 4288256 - 7

DELFINO MARITIME CORP
REPUBLIC OF THE
MARSHALL ISLANDS

JAI SHARMA
FOR + ON BEHALF OF
DOLPHIN MARITIME & AVIATION
SERVICES AS AGENTS FOR
FERPINTA PORTUGAL

(and if applicable the remainder of the provision in question) shall not be affected.

## VII] JURISDICTION CLAUSE

This Agreement will be construed under English law and any dispute arising from this Agreement will be determined in Arbitration in London, each party to appoint their own Arbitrator, with LMAA rules to apply.

SEA WIND MARITIME COMPANY S.A.
NATTIMAKH ETAPIA N,99/67
XAPIANOY TPIOAEA 1 - NEIRAIAE 185 36
AAM 093733374 - Δ.Ο.Υ. ΠΛΟΙΩΝ ΠΕΙΡΑΙΑ
T.Λ. 4285566 - 7

JAI SHARMA
For + on Behalf of
Dolphin Maritime +
Aviation Services As
Agents for
Perpinta, Portugal

DELFINO MARITIME CORP
REPUBLIC OF THE
MARSHALL ISLANDS

DOLPHIN MARITIME & AVIATION SERVICES LTD
DOLPHIN HOUSE, 16 THE BROADWAY
STANMORE, MIDDLESEX, HA7 4DW
ENGLAND

TEL: +44 (0) 20 8954 6800
FAX: +44 (0) 20 8954 6844
EMAIL: info@dolphin-maritime.com

# EXHIBIT "C

# RM de GRUYTER & CIA LDA

Casa Infanta de Sagres
Largo Do Buzi  1-6
P.O Box 44
Beira, Mozambique

MARINE SURVEYORS ASSESSORS
CARGO SUPERINTENDENTS
*COMMODITY INSPECTORS*
*SAMPLERS*

Telephone + 258-3- 325163
Fax + 258-3-322916
Telex 7343
Mail: terminais@teledata.mz

Our reference: MFBLX 0611/0068

## *CARGO CONDITION SURVEY*
### *Preliminary Report*
### MV "MICHAIL M"

THIS IS TO CERTIFY THAT, the undersigned Marine Surveyor attended onboard the Mv. "MICHAIL M" at Beira Anchoarge on the 2nd November 2007 to carry out cargo condition survey of a consignment described as 3000mt of reinforcement steel bars.

**WE RE PORT AS FOLLOWS:**

The Mv Michael M arrived at Beira port on the 29th and berthed on the 30th October 2007. During discharging the receivers claimed on the condition of cargo allegedly because it was affected water ingress into the hold. Before finishing discharge vessel was shifted to anchorage on the 31st November 2007 until further instructions to re-berth

**INSPECTION:**

On the 31st October 2007, we received an invitation from the Owners to attend onboard the vessel and carry out a survey of the condition of cargo, but as we arrived at the vessel when it was night, the inspection was carried out on the 2nd November 2007 at Anchorage.

The undersigned surveyor went to the vessel with another surveyor Michael Christensen acting on behalf fot eh cargo Underwriters. We arrived at the vessel at 6:30 hrs lt and after a brief talk with the Master in his cabin, we went to the cargo holds to inspect the cargo.

During inspection we noted that there was sound cargo apparently in good condition and there was also cargo which was rust stained at various extent but not at alarming proportions. We estimate the affected cargo to be about ten percent of the total cargo and the affected cargo is only superficially stained without any rust scales (See photographs attached).

**CONCLUSION**

It has been suggested that when the vessel start to discharge, the affected cargo should be separated and, if necessary, flushed by fresh water at high pressure and then dried by wind and sun. And on completion of discharge, a final survey will be made to determine the quantity of cargo which may be considered damaged by the receivers.

ISSUED AT BEIRA ON THIS DAY 2ND NOVEMBER 2007.
BY: RM de GRUYTER &CIA LDA

Herbert Nkomo.

# EXHIBIT "D

# FAX TRANSMISSION

# CLYDE&CO

51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE  CARACAS  DOHA  DUBAI  GUILDFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG  Clyde & Co LLP offices and associated  offices

| | |
|---|---|
| TO | To the Owners of the Vessel "MICHAIL M", c/o Sea Wind Maritime Co. SA, Piraeus, Greece |
| FAX NO | +30 210 428 6256 |
| ATTN | Claims Department |
| YOUR REF | |
| DATE | 31 October 2007 |

OUR REF    AJS/ALB/0705318
TOTAL PAGES (including cover)

Dear Sirs

"MICHAIL M"
Shipment of a cargo of steel, Turkey, Beira Port
Bill of Lading dated: 20th April 2007
Salt water damage to cargo
Security request at US$1 million (plus interest and costs)

We have been instructed to by Cargo Interests in relation to the cargo of steel that was shipped on board the vessel "MICHAIL M" on the above-mentioned voyage.

Our instructions are that the cargo was delivered with transit sea water damage.

Our instructions are therefore to arrange for security in relation to this claim. We have been asked to put forward the security figure of US$ 1 million (principal).

We attach for your information a copy of the relevant Bill of Lading.

We also attach draft wording that we are prepared to recommend our clients to accept.

Please let us have your confirmation by return message as to the provision of security and as to the identity of the proposed guarantor.

IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244
CONFIDENTIALITY NOTICE

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law.
If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, any
any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error,
please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you.
Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at
its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or
consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDNLIT 1632966.1

D1

Please also let us have the details of the surveyor who is looking after the interests of the Carriers at Beira Port.

Yours very truly

CLYDE & CO. LLP

D2

**CHIOTELIS & Co**
Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)
T +30 210 4294 928   F +30 210 4294 948

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM:<br>Takis Chiotelis Esq |
|---|---|
| COMPANY:<br>CLYDE & CO | DATE:<br>5-11-2007 |
| FAX NUMBER:<br>00 44 207 623 5427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>4 |
| CC: | OUR REFERENCE: |
| RE: M/V MICHAIL M | YOUR REFERENCE: AJS/ALB0705318 |

N.B: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sir

We refer to the aforementioned matter and previous correspondence. We would like to deal with the matter in the following headings:

- **The survey report of Mr Herbert Nkomo of RM de GRUYTER & CIA LDA**

We attach the said report for ease of reference. It is obvious from the said report that there is no damage to the cargo by rust stain and that there is only surface rust and no scaling of the cargo. According to that report the affected cargo is about 10% of the total cargo. It has been recommended that the cargo is discharged, water blasted and then dried before a final assessment of the situation takes place.

- **The survey report of Michael Benjamin Christensen**

The said survey report which no doubt is in your hands, does not quantify the alleged damage to the cargo not even remotely, which is an indication that the USD1million letter of guarantee initially requested by your clients is an over exaggeration of the reality.

- **The steps from now on and the issues involved**

It is prudent to say at this stage that unfortunately, our clients are not covered by a P&I club and this is due to various reasons –not having to do with the condition of the vessel- one being the change of Clubs which coincided with the

---

An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

incident. Consequently, it has been very difficult for the owners to deal with the issue of any kind of guarante. This difficulty is very likely to remain unless the vessel generates further income.

At the same time you will be aware that the cargo was liable to GA contribution regarding the incident at Dardanelles and for that reason it was apparently agreed between cargo interests and owners both to forego any mutual rights of the owners to the cargo (for GA) and of the cargo interests on the vessel for delay in the delivery of the cargo. Furthermore it was accepted by both parties that due to the prolonged stay of the cargo in the holds, surface rust was bound to exist and that as long as any damage to the cargo was restricted to that, the cargo interests would raise no claim.

On the basis of the above, you realise that the owners were taken by surprise from your clients actions.

Your clients have the benefit of looking at M/V MICHAIL M for security, a vessel that could be arrested anywhere and at any time (within the year) so as any alleged claim to be satisfied. In the contrary our clients –if your clients actions proved to be wrongful or excessive- have only the security of the cargo as a last recourse, which will disappear if the cargo is discharged.

At the same time, it is imperative that our clients discharge the cargo and look for another charter as soon as possible so as to generate income and be able to satisfy any potential and possible demands in any event.

We are looking into the possibility of discharging the cargo in a place where until the issue of any damage is cleared a lien is retained on the cargo, until a final settlement is reached. It seems that the maximum exposure of your clients at the worse case scenario (i.e. all 10% of the cargo is totally ruined) is about USD$200.000,oo (two hundred thousand), which is always secured by the fact that the vessel can always be arrested at different ports as mentioned above. We would be grateful if we could have your views so that a progress can be made. Our clients are hesitating in discharging the cargo at the moment, because then their bargaining position will be vastly reduced.

We look forward to hearing from you.

Yours faithfully

CHIOTELIS & CO

2

**CHIOTELIS & CO**
Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)
T +30 210 4294 928    F +30 210 4294 948

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM:<br>Takis Chiotelis Esq |
|---|---|
| COMPANY:<br>CLYDE & CO | DATE:<br>5-11-2007 |
| FAX NUMBER:<br>00 44 207 623 5427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>1 |
| CC: | OUR REFERENCE: |
| RE: M/V MICHAIL M | YOUR REFERENCE: AJS/ALB0705318 |

N.B: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sir

Thank you for your fax of today.

There is an obvious divergence of opinion between the two surveyors that conducted the said survey.

Do you wish to appoint and internationally accepted firm of surveyors such as SGS to conduct a survey as to the cause of the rust on the steel bars? Our clients deny any damage from saltwater. Furthermore they assert that the surface rust that appears to exist will disappear with water blasting.

Consequently, our clients will vigorously defend any action against the vessel.

In relation to issue of discharging the cargo, as we said earlier, our clients must have a guarantee for any claim that may have against the cargo and in particular for GA contribution, so that the parting by discharging not to affect the possessory lien that our clients are entitled to in the cargo.

We look forward to hearing from you.

Yours faithfully

CHIOTELIS & CO

---

An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

D5

# FAX TRANSMISSION

# CLYDE&CO

51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE*  CARACAS  DOHA  DUBAI  GUILDFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG*  Clyde & Co LLP offices and associated * offices

| | |
|---|---|
| TO | To the Owners of the Vessel "MICHAIL M", c/o Sea Wind Maritime Co. SA, Piraeus, Greece, c/o Chiotelis & Co. |
| FAX NO. | +30 210 4294 948 |
| ATTN | Takis Chiotelis |
| YOUR REF | |
| DATE | 6 November 2007 |

| | |
|---|---|
| OUR REF | AJS/ALB/0705318 |
| TOTAL PAGES (including cover) | 5 |

Dear Sirs

## "MICHAIL M"

We refer to our previous correspondence including our fax to you dated 5 November 2007.

Specific reference is to made to the comments listed in your fax of 5 November 2007 (page 2), with regard to the position concerning, General Average contribution. In that regard, we now attach a copy of the "Settlement Agreement" dated, 26 October 2007. It is noted that this document evidences an agreement pursuant to which the Shipowners agreed to:

> "waive all and any rights and claims whatsoever including but not limited to their right to claim General Average contribution...".

The Receivers in turn agreed to waive any claims, etc.,

> "which arise solely from the delay incurred in the delivery of the cargo to Beira. This waiver of rights does not include claims or rights that the Receivers may have against the Owners and the Managers...due to the deterioration of the quality of the cargo or loss or damage to the cargo."

Following on from the above, the request for security made on behalf of our clients relates only to a claim relating to, saltwater contamination to the cargo. The evidence already available suggests

IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244
CONFIDENTIALITY NOTICE

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error, please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you. Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at its registered office at 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDNIII 1835599.1

that there has been ingress of seawater into the holds of the vessel, hence the concern of our clients that their cargo has been damaged.

In conclusion, therefore, our clients expect the Owners to proceed to deliver the cargo at Beira as per their obligations under the terms of the Contract of Carriage. May we please receive confirmation on behalf of Shipowners in that regard by way of a return message.

As far as the security request of our clients is concerned, our clients' request remains. The draft wording that we have forwarded to Owners does include (in Clause 4), a mechanism for adjusting the amount of the security. If we can please receive now the proposals of the Shipowners in that regard then it is hoped that progress can be made towards resolving the security aspect in an amicable manner.

Shipowners' urgent attention to the above would be most appreciated.

Yours very truly

CLYDE & CO. LLP

D7

**CHIOTELIS & CO**
Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)
T +30 210 4294 928   F +30 210 4294 948

*FACSIMILE TRANSMITTAL SHEET*

| TO: | FROM:<br>Takis Chiotelis Esq |
|---|---|
| COMPANY:<br>CLYDE & CO | DATE:<br>6-11-2007 |
| FAX NUMBER:<br>00 44 207 623 5427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>1 |
| CC: | OUR REFERENCE: |

RE: M/V MICHAIL M                YOUR REFERENCE: AJS/ALB0705318

N.B: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sir

Thank you for your recent exchanges. Our clients insist that the cargo is not affected by any damage and that the existing surface rust on the one hand is not a reason for your clients to seek any guarantee or to raise any claim pursuant to the said settlement Agreement and on the other hand the said surface rust is going to be removed by water blasting.

Your clients assertion that there is salt water damage is not supported by our client's surveyor and to that effect we have already asked you to agree that a joint independent surveyor from SGS is appointed to determine the issue.

Our clients wish to discharge the cargo so that a final survey to take place from an independent source since there is no consensus between the existing two surveyors. Our clients are confident that the cargo is not damaged and that the existing rust has not damaged the said cargo. If our clients are proved right, then you realise that the cargo interests will need to compensate our clients for their behaviour in seeking security in the region of USD$1million as this has caused delays and trouble to the owners who have further cargo to discharge in Madagascar, which can only be remedied if the cargo interests have a security there or the cargo itself under their custody.

We await your confirmation that a third independent surveyor from SGS can determine the extent of the rust and if this has caused pitting or scaling in the cargo and the cause of it.

Yours faithfully
CHIOTELIS & CO

An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

D8

# FAX TRANSMISSION



CLYDE&CO

51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE*  CARACAS  DOHA  DUBAI  GUILDFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG*  Clyde & Co LLP offices and associated * offices

| | |
|---|---|
| **TO** | To the Owners of the Vessel "MICHAIL M", c/o Sea Wind Maritime Co. SA, Piraeus, Greece, c/o Chiotelis & Co. |
| **FAX NO** | +30 210 4294 948 |
| **ATTN** | Takis Chiotelis |
| **YOUR REF** | |
| **DATE** | 6 November 2007 |

**OUR REF** AJS/ALB/0705318

**TOTAL PAGES (including cover)** 11

---

## SECOND FAX

Dear Sirs

## "MICHAIL M"

We now refer to our previous correspondence including your fax dated 6 November 2007 received here 12:25.

For the sake of ease of reference, we attach to this fax copies of:-

1. "Joint Damaged Cargo Survey" done by Messrs. Manica, document dated: 2 November 2007.

   Would Owners please note that our clients do have colour photographs (pages 3, 4, 5 and 6 of the Report).

2. "Cargo Condition Preliminary Report" of Messrs. RM de Gruyter & CIA LDA, document dated 2 November 2007.

In brief terms, it is noted that whereas Messrs. RM de Gruyter state that "there was ...cargo which was rust stained at various extents but not at alarming proportions", in the report of Messrs. Manica, it is confirmed that water was found on the tank top of the vessel. The surveyors stated that "it became apparent that the hatch covers had admitted water into the lower holds for the

---

**IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL** +44 (0) 20 7623 1244
**CONFIDENTIALITY NOTICE**

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law.
If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient,
any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error,
please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you.
Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at
its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or
consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDN/JT 1836028.1

D9

forward and aft hatch covers" (page 4 of the document). The attending surveyors confirmed "agreed observations" (page 5 of the report) to the effect that it was agreed that water had entered into the lower hold. The cause of water ingress was due to defective hatch covers found in very poor condition. Further, it was agreed that the hatch covers of the vessel were in very poor maintenance condition, corroded with numerous preparations (page 6). From the report, it is apparent that there is damage to the cargo, for example (page 6 of the report). There is, at present, no agreement as to the underlying extent of such damage and to the cause of it.

In terms of moving forward, therefore, our clients have requested security in the event that it is determined, that the rust damage to the cargo was caused by contamination with saltwater. We confirm our view that the request remains valid. Further, we confirm our views that by making such a request, Cargo Interests have adhered to the terms of the Settlement Agreement forwarded to you together with our earlier fax. It certainly is the expectation of Cargo Interests that Owners will do likewise.

Accordingly, our clients are seeking the urgent confirmation of the Owners that they are proceeding to deliver the cargo. As regards dealing with the damaged cargo, our clients have given instructions to the attending cargo surveyors to ensure that all such steps are taken with the knowledge and, as far as possible, the co-operation of the surveyors attending on behalf of the carriers. It certainly is hoped that this cause of action will assist in promoting consensus between the attending surveyors both as to the cause and the extent of damage to the cargo.

We look forward to hearing from you on an urgent basis.

Yours very truly

CLYDE & CO. LLP

# FAX TRANSMISSION



51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE  CARACAS  DOHA  DUBAI  GUILDFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG*  Clyde & Co LLP offices and associated * offices.

| | |
|---|---|
| **TO** | To the Owners of the Vessel "MICHAIL M", c/o Sea Wind Maritime Co. SA, Piraeus, Greece, c/o Chiotelis & Co. |
| **FAX NO** | +30 210 4294 946 |
| **ATTN** | Takis Chiotelis |
| **YOUR REF** | |
| **DATE** | 7 November 2007 |

**OUR REF**  AJS/ALB/0705318

**TOTAL PAGES (including cover)**  2

---

Dear Sirs

## "MICHAIL M"

We write further to our previous correspondence including our fax to you dated 5 November 2007.

We write to confirm that our clients have given us instructions to the effect that they agree to have the cargo that has been delivered from this vessel to be surveyed by a third surveyor.

Having given consideration to matters, we are prepared to recommend to our clients to instruct the surveyor:-

Graham Elder

Address: Graham Elder Associates Limited,
Langlands,
1 Kymin Road,
Penarth,
Vale of Glamorgan,
CF64 1AQ

Tel. +44 29 2070 3589
Fax: +44 29 2070 0125

---

IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244

CONFIDENTIALITY NOTICE

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error, please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you. Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDNLIT 1836530.1

D11

Mobile phone: +44 7921 566171
Email: mail@grahamelder.co.uk.

Our proposed recommendation to our clients is on the basis that all of the costs involved in
instructing Mr. Elder will be shared in equal part between our client and your clients, and that our
clients receive an undertaking from your firm to bear the  share of Owners in these expenses.

We look forward to your confirmation.

Yours very truly

CLYDE & CO. LLP

D12

**CHIOTELIS & CO**

Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)

T +30 210 4294 928   F +30 210 4294 948

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM:<br>Takis  Chiotelis Esq |
|---|---|
| COMPANY:<br>CLYDE & CO | DATE:<br>7-11—2007 |
| FAX NUMBER:<br>00 44 207 623 5427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>1 |
| CC: | OUR REFERENCE: |
| RE M/V MICHAIL M | YOUR REFERENCE: AJS/ALB0705318 |

N.B: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sir

We refer to the aforementioned matter and thank you for your last exchange.

Our clients wish to determine the issue of the condition of the cargo as soon as possible and to that effect they welcome the decision of the cargo interests to agree that a third independent surveyor considers the divergence of opinion between the current surveyors and determine the extent of the damage if any to the cargo.

Our clients suggest that as a third surveyor is appointed a surveyor from SGS the internationally approved and acclaimed firm that has also a branch in Mozambique. We state the details of the branch here below and suggest that a communication is sent asking for the availability of a surveyor to attend the vessel and the cargo. In that way the impartiality of the outcome will be more secure. We also suggest that agreed questions are asked to the said surveyor.

SGS MOZAMBIQUE LTD

RUA DO BAGAMOYO NR.322 1O ANDAR
MAPUTO
TEL: 00258 21 31 34 88, FAX: 00258 21 31 34 99
E-MAIL:rui.silva@sgs.com ATT MR RUI SILVA.

We look forward to hearing from you.

CHIOTELIS & CO

---

An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

D13

**From:** Jai Sharma [mailto:jai@dolphin-maritime.com]
**Sent:** Wednesday, November 07, 2007 4:15 PM
**To:** Sea Wind Maritime SA
**Cc:** filipe.soares@ferpinta.pt; Ferpinta Dr. Nuno Pires
**Subject:** MICHAIL M

Dear Captain Theo,

Please note that we are informed that the cargo owners are agreeable to a third survey on the cargo to be done by independent surveyors SGS. Since the cargo is being discharged directly into trucks, they suggest this is done at their premises which are 2.5km from the port.

Please confirm that the cargo will now be discharged.

Best regards
Jai Sharma


_____ Information from ESET Smart Security, version of virus signature database 2968 (20080324)
_____

The message was checked by ESET Smart Security.

http://www.eset.com


_____ Information from ESET Smart Security, version of virus signature database 3173 (20080610)
_____

The message was checked by ESET Smart Security.

http://www.eset.com


7/10/2008

D14

# FAX TRANSMISSION



51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI BELGRADE* CARACAS DOHA DUBAI GUILDFORD HONG KONG LONDON LOS ANGELES MOSCOW NANTES NEW YORK PARIS
PIRAEUS RIO DE JANEIRO SHANGHAI SINGAPORE ST PETERSBURG* Clyde & Co LLP offices and associated * offices

| | |
|---|---|
| **TO** | To the Owners of the Vessel "MICHAIL M", c/o Sea Wind Maritime Co. SA, Piraeus, Greece, c/o Chiotelis & Co. |
| **FAX NO** | +30 210 4294 948 |
| **ATTN** | Takis Chiotelis |
| **YOUR REF** | |
| **DATE** | 8 November 2007 |

**OUR REF**    AJS/ALB/0705318

**TOTAL PAGES (including cover)**    4

Dear Sirs

**"MICHAIL M"**

We refer to our previous correspondence including our second fax dated 7th November 2007.

We have been forwarded copy of a message sent by Captain Theo. For ease of reference a copy is attached.

Our clients' position has been, and remains, that they agree to the suggestion that a third independent surveyor be retained in order to check the condition of the cargo being delivered from this vessel. However, we confirm that our clients do not agree that the third surveyor will be SGS. Our clients have put forward the name of Mr Graham Elders who is a well known UK based surveyor and it is the view of our clients that his name should be acceptable also to Owners. Further we are still without an Undertaking from your firm to bear 50% of the costs of the attendance of Mr Elders.

The Owners have the duty to deliver the cargo and our clients cannot see any connection between an agreement or lack of an agreement to appoint a third surveyor, and the discharge and delivery of the cargo.

Would the Owners accordingly please confirm that, regardless of the question of the appointment of a third surveyor, that they are proceeding to discharge this cargo without any delay.

**IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244**
**CONFIDENTIALITY NOTICE**

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law.
If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient,
any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error,
please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you.
Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at
its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or
consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

[UKMLIT 1837534.1]

D15

Our clients have adhered to the terms of the settlement agreement concluded with Owners and propose to continue to do so. It is hoped that Owners will do likewise.

We look forward to receiving your urgent confirmation on the above.

Yours very truly

CLYDE & CO. LLP

D16

**CHIOTELIS & CO**

Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)

T +30 210 4294 928    F +30 210 4294 948

---

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: | FROM:<br>Takis Chiotelis Esq |
| COMPANY:<br>CLYDE & CO | DATE:<br>9-11—2007 |
| FAX NUMBER:<br>0044 207 6235427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>1 |
| CC: | OUR REFERENCE: |
| RE: MICHAIL M | YOUR REFERENCE: AJS/ALB/0705318 |

N.B: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sirs

Thank you for your fax dated 8 November 2007.

Our clients do not agree to the Mr Elder being the third "independent" surveyor for obvious reasons. At the same time it is surprising that your clients do not trust a worldwide known firm as SGS but they only wish a particular individual to determine the real state of the cargo.

For these reasons, our clients insist that a third independent surveyor is appointed by SGS.

We look forward to hearing from you.

Kind regards

CHIOTELIS & CO

An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

D17

**CHIOTELIS & Co**
Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)
T +30 210 4294 928    F +30 210 4294 948

### *FACSIMILE TRANSMITTAL SHEET*

| TO: | FROM:<br>Takis Chiotelis Esq |
|---|---|
| COMPANY:<br>CLYDE & CO | DATE:<br>12-11—2007 |
| FAX NUMBER:<br>0044 207 6235427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>1 |
| CC: | OUR REFERENCE: |
| RE: MICHAIL M | YOUR REFERENCE: AJS/ALB/0705318 |

N.B: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sirs

Thank you for your last exchange.

We sought some clarification from our clients regarding their comments.

Their response was that they find it bizarre that your clients insist on particular individuals only to conduct an independent survey, all of which reside thousand of miles away from the place of the incident and they do not trust a surveyor randomly chosen by an internationally acclaimed firm such as SGS, especially when the said surveyor is going to be located much nearer than Belgium and London to the place of the incident.

We look forward to hearing from you.

CHIOTELIS & CO



An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

D18

13/11 '07 TUE 10:53
13/11 '07 10:53 FAX 020 7623 5427    CLYDE & CO  A                                    210-4111667
                                                                                              p.1

# FAX TRANSMISSION

# CLYDE&CO

51 Eastcheap
London EC3M 1JP
United Kingdom

## URGENT
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE  CARACAS  DOHA  DUBAI  GUILFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG  Clyde & Co LLP offices and associated offices

| | |
|---|---|
| TO | To the Owners of the Vessel "MICHAIL M", c/o Petramar Managers SA |
| FAX NO | +30 210 4111667 (Piraeus) |
| ATTN | Mr. Petros Pitsiladis |
| YOUR REF | |
| DATE | 13 November 2007 |

OUR REF    AJS/ALB/0705318
TOTAL PAGES (including cover)  2

Dear Sirs

## "MICHAIL M"

We refer to our previous correspondence including your telephone calls to us on Monday 12th November 2007.

1.      We write to confirm that our clients have instructed us to the effect that they are prepared to agree that SGS Mozambique will be appointed by the parties as an independent surveyor. Would you know please forward to us for the consideration of our clients draft of an agreement dealing with the appointment. Our clients also require an undertaking that the Carriers will bear 50 percent of the costs involved. Please let us know who it is proposed that will give such an undertaking. Please also confirm the steel expertise of the proposed SGS surveyor.

2.      Following on from the above we write to confirm the comments made during your telephone calls to ourselves to the effect that it remains the expectation of our clients that the Carriers will proceed and deliver the cargo immediately.

3.      The alternative is that unless we receive confirmation by return that this is now taking place, we are to nominate an arbitrator under the terms of the Settlement Agreement dated 26th October 2007 and within that framework will also be seeking an urgent order compelling the Carriers to deliver the cargo.

IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244
CONFIDENTIALITY NOTICE

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error, please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you. Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDNLIT 1030226.1

D19

**CHIOTELIS & CO**
Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)
T +30 210 4294 928    F +30 210 4294 948

---

## *FACSIMILE TRANSMITTAL SHEET*

| | |
|---|---|
| TO: | FROM:<br>Takis  Chiotelis Esq |
| COMPANY:<br>CLYDE & CO | DATE:<br>13-11—2007 |
| FAX NUMBER:<br>00 44 207 623 5427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>1 |
| CC: | OUR REFERENCE: |
| RE: MICHAIL M | YOUR REFERENCE: AJS/ALB/0705318 |

N.B.: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sirs

Thank you for your fax dated 13-11-2007.

Practically we will have now to deal with the following matters:

A) Do you agree that the owners write to their agent in Mozambique so that he can ask SGS to arrange for the appointment? How do you wish the particular appointment to take place?

B) The draft Agreement for the appointment of the independent surveyor will refer to the consensus of the parties to abide with the decision of the surveyor whose findings will be final and binding. Have you got any particular wishes?

C) Do you wish to agree upon specific questions to be answered by the surveyor?

D) Do you wish SGS to give a CV of the suggested surveyor?

We look forward to hearing from you.

Kind Regards

CHIOTELIS & CO

---

An unincorporated association of professionals.
A members' list and their professional qualifications is open to inspection at the above office.
www.chiotelisandco.gr

13/11/'07 TUE 18:26    PAGE    1/002    Fax Server

# FAX TRANSMISSION



51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE*  CARACAS  DOHA  DUBAI  GUILDFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG*  Clyde & Co LLP offices and associated * offices

| | |
|---|---|
| TO | Messrs. Chiotelis & Co. |
| FAX NO | +30 210 4294 948 |
| ATTN | Takis Chiotelis Esq |
| YOUR REF | |
| DATE | 13 November 2007 |
| CC | |
| FAX NO | +30 210 42 86 258 |

OUR REF     AJS/ALB/0705318
TOTAL PAGES (including cover)  2

---

Dear Sirs

## "MICHAIL M"

We refer to our previous correspondence including your fax dated, 13th November 2007, received here, 13:00 hours. We respond using the paragraph numbering of your fax.

A)  Our suggestion is that the letter is written by your firm to SGS in Mozambique and us in copy. Might we suggest that you forward to us a draft for our consideration before the letter goes out.

B)  We believe our clients will want to ensure that the surveyor is given access to all of the relevant cargo and to the relevant cargo holds of the vessel. Further the surveyor should have the opportunity to discuss matters with the surveyors already instructed on behalf of Cargo Interests and the Carriers before he forms his view. His opinion we believe should be set out giving his detailed reasons for his conclusions including:

    1.    Extent of damage to the cargo.
    2.    Type of damage: physical/salt water/fresh water/other.
    3.    Cause of damage to the cargo.

---

**IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244**

CONFIDENTIALITY NOTICE

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law. If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error, please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you. Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDNLIT 1639948.1

D21

4.    Approximate period of time during which any damage was caused.
5.    Liability.
6.    Quantum.

C)    Please see above.

D)    We do believe it would be helpful if SGS could confirm the particular expertise of the surveyor as far as steel cargoes are concerned.

In addition to the above, we do need confirmation from the Carriers as to the mode of payment to the surveyor. Our clients have requested that they are provided with assurances as to how the surveyor will get paid. According could you please forward to us for our consideration the proposals of the Carriers including specifically the identity of the party who, it is proposed, will give an undertaking to bear the part of the Carriers in the fees of the surveyor.

Finally, we are still without the confirmation of the Carriers that the cargo is being delivered from the vessel. Please could this be confirmed to us by way of a return message.

Yours very truly

CLYDE & CO. LLP

LDNLIT 1639948.1                                2

D22

**CHIOTELIS & CO**

Advocates and Consultants

5, Sachtouri Street, Piraeus 18536 HELLAS (GR)

T +30 210 4294 928   F +30 210 4294 948

| *FACSIMILE TRANSMITTAL SHEET* | |
|---|---|
| TO: | FROM:<br>Takis  Chiotelis Esq |
| COMPANY:<br>CLYDE & CO | DATE:<br>14-11—2007 |
| FAX NUMBER:<br>00 44 207 623 5427 | TOTAL NO. OF PAGES INCLUDING COVER:<br>3 |
| CC: | OUR REFERENCE: |
| RE: MICHAIL M | YOUR REFERENCE: AJS/ALB/0705318 |

N.B.: THIS FAX IS CONFIDENTIAL AND MAY ALSO BE PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY; YOU SHOULD NOT COPY OR USE THIS FAX FOR ANY PURPOSE NOR DISCLOSE ITS CONTENTS TO ANY PERSON.

Dear Sirs

Thank you for your fax dated 13-11-2007.

First of all we are attaching draft letter which our clients propose to send to SGS Mozambique. We hope you agree with the contents. On that letter we cover point D as well and also give the necessary instructions to the surveyor to cover the necessary points you mention in his report.

We also enclose a draft Agreement which deals with the validity of the independent's surveyor's report and the consensus of the parties to it.

We trust that the surveyor that will be nominated will not need the assistance of the existing reports and in any event it is fairer that the said surveyor does the work without any external influences whatsoever.

The day after tomorrow a berth will be available and the owners have requested a place, so it is important to agree to all the issues today or tomorrow latest.

We look forward to hearing from you.

Kind Regards

CHIOTELIS & CO

DELFINO MARITIME CORP.

Majuro Marshall Islands

**For the attention of**
**S.G.S. Mozambique /**
**For the attention of**
**Mr. Manuel Paulo King And Sons- ship agents**

**CC CARGO UNDERWRITERS, BREFFKA & HEHNKE GMBH & Co**

14 November 2007

Dear Sir

We are the owners of M/V MICHAIL M, of Basseterre St Kitts & Nevis GRT 2824.

Our vessel arrived at Beira with 3.003,7 MT of hot rolled corrugated, reinforcement round bars. The consignees allege that the said cargo has suffered damage and have asked us to put security for their alleged claim. We allege that there is no damage to the said cargo, apart from surface atmospheric rust which occurred due to the prolonged stay of the cargo in the holds and that with water blast this damage will disappear.

The cargo underwriters have agreed with us that an independent surveyor should determine the following points in relation to the abovementioned issue:

1- Extent of damage to the cargo –if any
2- Type of damage: physical-atmospheric/salt water/ fresh water/other
3- Cause of the damage (if any damage exists)
4- Approximate period of time during which any damage occurred
5- Liability
6- Quantum

We would be grateful if you could nominate a surveyor of yours which will be available in the region and with the necessary expertise for the cargo in question, to determine the abovementioned issues.

The said surveyor will be able to board the vessel and check the cargo, but he should also have the time to attend the discharge of the cargo and report with precision as to the actual quantity of cargo that may have been affected and in what degree. Costs and expenses will be borne equally by both owners of the vessel and consignees.

We look forward to hearing from you the nomination. Given that a berth will be available in two or three days from today, your urgent attention on the matter will be appreciated.

Kind regards

D24

# FAX TRANSMISSION



# URGENT

51 Eastcheap
London EC3M 1JP
United Kingdom
Telephone: +44 (0) 20 7623 1244
Facsimile: +44 (0) 20 7623 5427
DX: 1071 London/City
www.clydeco.com

ABU DHABI  BELGRADE*  CARACAS  DOHA  DUBAI  GUILDFORD  HONG KONG  LONDON  LOS ANGELES  MOSCOW  NANTES  NEW YORK  PARIS
PIRAEUS  RIO DE JANEIRO  SHANGHAI  SINGAPORE  ST PETERSBURG*  Clyde & Co LLP offices and associated * offices

| | |
|---|---|
| TO | To the Owners of the Vessel "MICHAIL M",  c/o Messrs Chiotelis & Co |
| FAX NO | +30 210 4294 948 |
| ATTN | |
| YOUR REF | |
| CC. | Petros Pitsiladis |
| FAX NO | +00 30 210 428 6258 |
| DATE | 16 November 2007 |

OUR REF     AJS/ALB/0705318

TOTAL PAGES (including cover)   2

Dear Sirs

## "MICHAIL M"

We refer to our previous correspondence and your fax of 14th November 2007.

We confirm that on 15th November 2007 we took a telephone call from Mr Petros, during which we confirmed to him that in order for us to take instructions from our clients on the draft agreement we did believe that our clients would want:

1.    An Undertaking from a third party that the share of Owners in the appointment of the independent surveyors will be paid.

2.    Details concerning the relevant experience of the SGS Surveyor who it is intended will be the third expert.

3.    We did also confirm to Mr Petros that our clients were still without confirmation that the vessel was delivering the cargo.

We confirm we have not heard from Owners' side and would be grateful if we could now receive

IF YOU HAVE NOT RECEIVED THE TOTAL NUMBER OF PAGES OR NEED ASSISTANCE, PLEASE CALL +44 (0) 20 7623 1244
CONFIDENTIALITY NOTICE

This facsimile and/or the documents accompanying it may be privileged and confidential and exempt from disclosure under applicable law.
If the reader is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient,
any unauthorised use, disclosure, copying, distribution or dissemination is strictly prohibited. If you have received our facsimile (or any copy) in error,
please immediately notify us by telephone on +44 (0) 20 7623 1244 and return this facsimile and any copies to us as soon as possible. Thank you.
Clyde & Co LLP is a limited liability partnership registered in England and Wales under number OC326539. A list of members is available for inspection at
its registered office 51 Eastcheap, London EC3M 1JP. Clyde & Co LLP uses the word "partner" to refer to a member of the LLP, or an employee or
consultant with equivalent standing and qualifications. Regulated by the Solicitors Regulation Authority.

LDNUT 18417721

D25

the confirmation of Owners by reference to the above listed points.

Yours very truly

CLYDE & CO. LLP

D26

# EXHIBIT "E

DELFINO MARITIME CORP.

1 Charilaou Trikoupi Str. Piraeus 18545 Greece


**For the attention of
S.G.S. Mozambique**

CC CARGO UNDERWRITERS, BREFFKA & HEHNKE GMBH & Co

14 November 2007

Dear Sir

We are the owners of M/V MICHAIL M, of Basseterre St Kitts & Nevis GRT 2824.

Our vessel arrived at Beira with 3.003,7 MT of hot rolled corrugated, reinforcement round bars. The consignees allege that the said cargo has suffered damage and have asked us to put security for their alleged claim. We allege that there is no damage to the said cargo, apart from surface atmospheric rust which occurred due to the prolonged stay of the cargo in the holds and that with waterblast this damage will disappear.

The cargo underwriters have agreed with us that an independent surveyor should determine the following points in relation to the abovementioned issue:

1- Extent of damage to the cargo –if any
2- Type of damage: physical-atmospheric/salt water/ fresh water/other
3- Cause of the damage (if any damage exists)
4- Approximate period of time during which any damage occurred
5- Liability
6- Quantum

We would be grateful if you could nominate a surveyor of yours which will be available in the region and with the necessary expertise for the cargo in question, to determine the abovementioned issues.

The said surveyor will be able to board the vessel and check the cargo, but he should also have the time to attend the discharge of the cargo and report with precision as to the actual quantity of cargo that may have been affected and in what degree.

Costs and expenses will be borne equally by both owners of the vessel and consignees.

We look forward to hearing from you the nomination.

Given that a berth will be available in two or three days from today, your urgent attention on the matter will be appreciated.

# EXHIBIT "F



**SGS**

Mocambique Lda
Estrada Nacional No 6, Vaz
Beira

Tel : (+258 23) 302104
Fax : (+258 23) 302103
Cell:  +258 843435366
Email: Hava.Abdulrazak@sgs.com ( Hava Abdulrazak)

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

Page 1/6

# SURVEY REPORT

## Sea Wind Maritime SA., PIRAEUS

| | | |
|---|---|---|
| SURVEY REPORT ON | | SUSPECTED DAMAGE TO STEEL (HOT ROLLED CORRUGATED REINFORCEMENT ROUND BARS) |
| SHIPPERS | | UNKNOWN/NOT ADVISED |
| CONSIGNEE | | JERPINTA MOZAMBIQUE, BEIRA, MOZAMBIQUE |
| CARGO MARKS & NO.S | | AS ADDRESSED JERPINTA MOZAMBIQUE |
| CARGO DESCRIPTION | | 3003.7 MT HOT ROLLED CORRUGATED REINFORCEMENT ROUND BARS |
| VESSEL | | "MICHAIL M" |
| FLAG | : | ST KITTS & NEVIS |
| PORT OF REGISTRY | : | BASSETERRE |
| CALL SIGN | : | V4FN |
| REGISTERED NO | : | SKN 1001142 |
| IMO NO. | : | 7522174 |
| OWNERS | : | DELFINO MARITIME CORPORATION |
| OPERATORS | : | SEA WIND MARITIME S.A. |
| DATE BUILT | : | 1977 |
| GROSS TONNAGE (SUEZ) | : | 2824 BR2 (2656,43) |
| NET TONNAGE (SUEZ) | : | 1673 NRT (2042,25) |
| APPLICATION FOR SURVEY: | | 21 NOVEMBER 2007 |

Mocambique, Lda   Estrada Nacional No6 –Vaz, Beira Mocambique
t (258) 23 302104   f (258) 23 302103   www.sgs.com

Member of SGS Group (Société Générale de Surveillance)

This document is issued by the Company under its General Conditions of Service printed overleaf. Attention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein.

Any holder of this document is advised that information contained hereon reflects the Company's findings at the time of its intervention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to its Client and this document does not exonerate parties to a transaction from exercising all their rights and obligations under the transaction documents. Any unauthorized alteration, forgery or falsification of the content or appearance of this document is unlawful and offenders may be prosecuted to the fullest extent of the law.

SGSPAPER
07759550



 

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

Page 2/6

# I N D E X

|                                    | Page. |
|------------------------------------|-------|
| 1. INTRODUCTION                    | 3.    |
| 2. DOCUMENTATION                   | 3.    |
| 3. SHIPMENT TO BEIRA               | 3.    |
| 4. CARGO/VESSEL EXAMINATION        | 4.    |
| 5. CONCLUSION                      | 5.    |
| Annex: PHOTOGRAPH REPORT           |       |

"The information stated in this report for certificate is derived from the results of inspection or testing procedures carried out in accordance with the instructions of our Client and/or our assessment of such results on the basis of any technical standards, trade custom or practice, or other circumstances which should in our professional opinion be taken into account."



...mbique, Lda    Estrada Nacional No6 –Vaz, Beira Mocambiqie
                  t (258) 23 302104  f (258) 23 302103  www.sgs.com                    2

Member of SGS Group (Société Générale de Surveillance)

This document is issued by the Company under its General Conditions of Service printed overleaf. Attention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein.

Any holder of this document is advised that information contained hereon reflects the Company's findings at the time of its intervention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to its Client and this document does not exonerate parties to a transaction from exercising all their rights and obligations under the transaction documents. Any unauthorized alteration, forgery or falsification of the content or appearance of this document is unlawful and offenders may be prosecuted to the fullest extent of the law.

SGSPAPER
07759549





Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

Page 3/6

## 1. INTRODUCTION

In accordance with survey application received from Messrs Sea Wind Maritime SA., acting on behalf of the vessel's owners, Delfino Maritime Corporation, Piraeus we Moçambique Lda, Beira, confirm having attended in our capacity as independent Marine Cargo Surveyors to examining the above captioned shipment both onboard the vessel and at receivers' premises in Beira, Mozambique.

This report is an interim report and covers the results of our investigations into this matter, to date.

Should principals require further investigation into this matter, we await receipt of the appropriate instructions.

In the meantime we report as follows:

## 2. DOCUMENTATION

No documentation of whatsoever nature has been provided to our office, to date, relating to this shipment.

Pescodana Lda, Beira (who are employed in the fishing industry in Mozambique) were represented by Mr M B Christensen who is a Marine Engineer.

Christensen advised us that he had been subcontracted by the local Lloyds agency in Beira who, in turn were acting on behalf of Dusseldorf based insurance brokers, Breffka & Hehnke.

Breffka & Hehnke are the brokers/insurers for the shippers/receivers of this steel shipment.

The following documentation was requested from Christensen/receivers:

   a)  Bill of Lading.

   b)  Shippers Invoice.

   c)  Shippers Packing List, if issued.

   d)  Copy Insurance Certificate (issued by Breffka & Hehnke, Dusseldorf).

   e)  Loading survey report (Breffka & Hehnke customarily instruct surveyors to superintend loading and discharge of steel shipments insured by them).

   f)  Copy of port delivery notes/transporters delivery notes to Jerpinta Mozambique premises.

   g)  Copies of any correspondence that Jerpinta Mozambique may have exchanged with shippers and/or the insurers of this shipment.

Pescodana/Christensen informed us subsequently that they had forwarded our requests to the Lloyds Agency in Beira who, in turn would contact Breffka & Hehnke in Dusseldorf.

At the time of issuing this report, no further response has been received.

We are therefore under the circumstances unable to comment on the correct tonnage/value etc.

ambique, Lda | Estrada Nacional No6 –Vaz, Beira Mocambiqie
t (258) 23 302104  f (258) 23 302103  www.sgs.com

3

Member of SGS Group (Société Générale de Surveillance)

This document is issued by the Company under its General Conditions of Service printed overleaf. Attention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein.

Any holder of this document is advised that information contained hereon reflects the Company's findings at the time of its intervention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to its Client and this document does not exonerate parties to a transaction from exercising all their rights and obligations under the transaction documents. Any unauthorized alteration, forgery or falsification of the content or appearance of this document is unlawful and offenders may be prosecuted to the fullest extent of the law.



SGSPAPER

07759548

# SGS

# SGS

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

## 3.  SHIPMENT TO BEIRA

Information provided to us was on the basis of discussions held with the vessel's Chief Officer at the time of our attendance onboard the vessel in Beira on 22nd November 2007.

This information is summarised as follows:

1) The cargo was originally loaded in Turkey.

2) The vessel grounded off Turkey, in May 2007; general average was apparently declared.

3) No claims were submitted against cargo interests by owners (according to the Chief Officer), or by cargo owners against vessel's owners at this time.

4) The vessel then loaded cargo in Israel (port unknown) which was subsequently discharged at a Nigerian port.

5) On arrival of the vessel at Beira, apparently ± 1000 mt of the original steel parcel was discharged at that port thereafter receivers (Jerpinta) advised that they wished to claim on this shipment and as a result there was an attempt to obtain security from owners amounting to US$ 1 000 000,00.

6) We understand that prior to our requested intervention in this matter, the vessel then moved off the berth and proceeded to outer anchorage on 1st November 2007 where it remained until 17h30 on 19 November 2007, thereafter returned to the berth in Beira port to resume discharge.

No documentation has to date been provided to our office to substantiate the exact tonnage discharged and received by Jerpinta, but it is assumed that this comprised the entire parcel of 3003,7mt manifested.

## 4.  CARGO/VESSEL EXAMINATION

Following survey application, the first available flight to Beira was on 22nd November 2007.

By the time we arrived in the port, the vessel was nearing the end of discharge and was set to sail within a matter of hours.

Accordingly, as per our e-mail communication to Sea Wind Maritime SA on 26th November 2007, we suggested that owners give consideration to appointing a surveyor at the next port of call to carry out ultrasonic scanning of hatch covers and/or subject the hatch covers to a simple hose test to determine/confirm watertight integrity.

This was to counter any claims made by cargo interests that sea water ingress had occurred into cargo holds.

ucted spot silver nitrate tests, at random on the tank top plating in the cargo holds and on of the shipment still onboard the vessel at this time, also on the quayside and ntly at receiver's premises in Beira.

ambique, Lda    Estrada Nacional No6 –Vaz, Beira Mocambique
                 t (258) 23 302104  f (258) 23 302103  www.sgs.com                                      4

Member of SGS Group (Société Générale de Surveillance)

This document is issued by the Company under its General Conditions of Service printed overleaf. Attention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein.

Any holder of this document is advised that information contained hereon reflects the Company's findings at the time of its intervention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to its Client and this document does not exonerate parties to a transaction from exercising all their rights and obligations under the transaction documents. Any unauthorized alteration, forgery or falsification of the content or appearance of this document is unlawful and offenders may be prosecuted to the fullest extent of the law.

SGSPAPER

07759547







Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

Silver nitrate tests on quayside cargo and that delivered to receivers' premises was conducted jointly with Mr M Christensen, representing the local Lloyds Agency/cargo insurers.

• Page 5/5

All Silver Nitrate tests indicated a **negative** presence of chlorides, in turn indicating that no sea water ingress had occurred into the vessel's holds.

When confronted with this information, receiver's surveyor claimed that any residual chlorides may have been washed off by rain, following discharge.

It was pointed out that Silver Nitrate tests conducted on cargo onboard the vessel and on the cargo hold tanktop platings still revealed a negative presence of chlorides.

Examination of the round bars at receiver's premises revealed same to be stockpiled in the open and exposed to the elements.

The degree of corrosion on this material was worse than that noted onboard the vessel and on the quayside alongside the vessel.

When this was pointed out to receivers and the insurer's surveyor, we were informed that progressive corrosion as a result of exposure to fresh/rain water was not a problem, only exposure to salt water.

We repeated our findings that Silver Nitrate tests conducted onboard the vessel revealed no presence of chlorides.

It was clear from our discussion with the receivers/insurer's nominated surveyor that he had not carried out Silver Nitrate tests onboard the vessel, particularly on tanktop platings and had merely assumed that because the cargo was rusted it must have come into direct contact with sea water.

As stated in our update e-mail to principals on the 28th November, the storage conditions observed at the receiver's premises were not indicative of a receiver intending to protect their shipment from the elements.

We furthermore established that the receiver is not the end user of the cargo and in fact intends onward selling it to a construction company.

Further enquiries revealed that the steel is being utilised in the construction of a bridge over the Zambezi River.

It was noted that the receiver had not made any effort so far, either themselves or via their appointed surveyor, to try and clean up the shipment in order to mitigate the loss they claim to have suffered.

Furthermore from our discussions with the receiver, it was clear that no effort had been made to determine to what extent the rust would be a problem to their customer (the end user).

This type of product is not normally one that needs to be protected from the elements and it is for this reason we believe receivers did nothing at the time.



...bique, Lda | Estrada Nacional No6 –Vaz, Beira Mocambiqie
t (258) 23 302104  f (258) 23 302103  www.sgs.com

5

Member of SGS Group (Société Générale de Surveillance)

This document is issued by the Company under its General Conditions of Service printed overleaf. Attention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein.

Any holder of this document is advised that information contained hereon reflects the Company's findings at the time of its intervention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to its Client and this document does not exonerate parties to a transaction from exercising all their rights and obligations under the transaction documents. Any unauthorized alteration, forgery or falsification of the content or appearance of this document is unlawful and offenders may be prosecuted to the fullest extent of the law.

SGSPAPER

07759546







Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

Page 6/6

## 5.  CONCLUSION

On our return from Mozambique, we were contacted by U.K. based surveyors, Robert Lyon & Company.

We were informed that they had been recently appointed by Breffka & Hehnke, Dusseldorf to proceed to Beira and examine the cargo themselves.

We were also advised that Maritime Attorneys, Clyde & Co, London had been retained by Breffka & Hehnke, presumably with a view to instituting recovery proceedings against ship owners.

We explained to Robert Lyon & Company the results of our findings in Beira and pointed out that as far as we were concerned, the current condition of the cargo may be attributed to the effects of cumulative climatic variance and not as a result of any sea water ingress onboard the vessel.

We emphasized that the cargo had been stacked outside and exposed to the elements at receivers' premises.

We proposed that a further joint inspection should be held between our office, Robert Lyon & Company, Pescodana Lda and the receivers, Jerpinta Mozambique.

Robert Lyon & Company agreed with this proposal and tentatively suggested the first week of December 2007.

Under the circumstances we are not sure to what extent, if any receivers have made any effort to rectify the damage by removing rust, whether this is of any material effect to the end user (the construction company, to whom Jerpinta are selling the material) and if so, what documentation they have to support the costs of removing rust.

The terms of insurance cover are unknown and of course no documentation has been presented to this office.

We advised the Beira surveyors that receivers should in the first instance, institute claims against their cargo insurers and not directly against the vessel.

As no evidence of sea water ingress was found, indicated by the absence of chlorides during spot Silver Nitrate tests conducted onboard the vessel, it is our view, subject evidently to the vessel's owners having the opportunity to confirm cargo hold/hatch cover watertight integrity, that no claims can be brought against the vessel for sea water ingress/contact with the cargo in question.

It is also apparent that the insurers of this shipment will most probably not entertain any claims in terms of the policy, as rust proximately caused by the effects of climatic variance is usually and exclusion from the policy cover.

We place ourselves at principals' disposal should further investigation or comment upon this matter be required.

Issued without prejudice on this 29th day February 2008 at Beira

signature

ion affiliate SGS Mozambique, Lda

mbique, Lda     Estrada Nacional No6 –Vaz, Beira Mocambique
t (258) 23 302104   f (258) 23 302103   www.sgs.com     6

Member of SGS Group (Société Générale de Surveillance)

This document is issued by the Company under its General Conditions of Service printed overleaf. Attention is drawn to the limitation of liability, indemnification and jurisdiction issues defined therein.

Any holder of this document is advised that information contained hereon reflects the Company's findings at the time of its intervention only and within the limits of Client's instructions, if any. The Company's sole responsibility is to its Client and this document does not exonerate parties to a transaction from exercising all their rights and obligations under the transaction documents. Any unauthorized alteration, forgery or falsification of the content or appearance of this document is unlawful and offenders may be prosecuted to the fullest extent of the law.

SGSPAPER
07759545





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

1 - 6    Examination of cargo onboard including Silver Nitrate tests and general examination of hatches etc.





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

2.





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

3.



4.





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

5.



6.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

7 & 8   Silver Nitrate tests conducted on steel onboard – negative.



8.





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

9.    Further example.



10 – 14 Examination of cargo on quayside.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

11.



12.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

13.



14.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

15 – 32 Illustrating general condition of cargo on delivery to receiver's premises.



16.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

17.



18.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

19.



20.





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

21.



SGS

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

22.



PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

23.



24.



PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

25.



26.





PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

27.



28.



# SGS

## PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

29.



30.



**SGS**

PHOTOGRAPH INDEX

Certificate Nr. 250101 / 18119 / 08

File Nr. B / 20 / 9488 / 07

31.



32.



# EXHIBIT "G



## FACTURA / *INVOICE*    B0613

| PARA / TO : | **SEA WIND MARITIME SA** | DATA / *DATE* | 14-Jul-08 |
|---|---|---|---|
| | Att. Cpt. THEO | CODIGO / *CODE* | 2100 |
| | 1st Charilaou Trikoupi Str. | DIVISÃO / *DIVISION* | 20 |
| | Piraeus | DELEGACAO / *BRANCH* | 2 |
| | **Greece** | COMPANY CODE | . F 250101 |

| CLIENTE / *CLIENT* REF. : | **Email from Cpt THEO dd 20.11.2007** | | |
|---|---|---|---|
| SGS MOZ FILE NR. : | B/20/19/9488/07 | CERTIFICADO NR. / *CERTIFICATE NR.*   2501 /     / 2008 | |
| | | DE / *FROM PLACE* | Beira |
| MV / WHR : | MV MICHAEL M | PARA / *TO PLACE* | Beira |
| | | DO DIA / *FROM DATE* | 21.11.2007 |
| LOCAL / *PLACE* : | Beira | AO DIA / *TO DATE* | 22.11.2007 |
| MERCADORIA / *GOODS*: | | QUANTIDADE / *QTY* : | EMBALAGEM / *PACKAGE* : |
| STEEL | | 3,003.70 | BARS |

| SERVICOS / *SERVICES*<br>**Survey Investigation - MV MICHAEL M** | TARIFA / *RATE* | UNIDADE / *UNIT* | VALOR / *AMOUNT*<br>*(Local Currency MT)* |
|---|---|---|---|
| •Examination of cargo holds/hatch covers | | Total time | |
| •Silver Nitrate tests conducted in cargo holds and on cargo remaining | 1,300.00+20% | 2 ½ Working Days | |
| remaining onboard to determine whether or not chlorides were present | $1,625.00 | $4,062.50 | 99,450.00 |
| •examination of cargo on quayside | | | |
| •conducting of Silver Nitrate tests on cargo on quayside | | | |
| •survey fees and report compilation | | | |

| DESPESAS/*EXPENSES* | TARIFA / *RATE* | UNIDADE / *UNIT* | VALOR / *AMOUNT*<br>*(Local Currency MT)* |
|---|---|---|---|
| Airfair DUR/BEIRA/DUR | $1,532.94 | n/a | 37,526.40 |
| Petties/Out of pocket expenses ie. VISA/Meals etc. | $350.00 | n/a | 8,568.00 |
| Telephone/E-Mail/Mobile Phone | $75.00 | n/a | 1,836.00 |

*Cambio / Exchange Rate USD/Mt*    24.48

Prazo de pagamento / Payment conditions:  **15 dias / days**
Por cheque ou transferencia bancaria para / by cheque or bank transfer to:
Conta bancaria no. / bank account nr. :
STANDARD BANK USD - 101 / 015247 / 101 / 6

Praça 25 de Junho
MAPUTO-MOZAMBIQUE

**COSTS TO BE SHARED 50%/50% BETWEEN OWNERS AND CARGO RECEIVERS**
Instruction received from Sea Wind Maritime SA 12th May 2008

All orders are accepted and all reports and certificates issued subject to the
SGS General Conditions for Inspection and Testing Services (copy available upon request)

| | | | |
|---|---|---|---|
| SUBTOTAL | Mt | 147,380.40 | |
| IVA | | | |
| | Mt | 73,690.20 | |
| TOTAL | USD | 3,010.22 | |

FACTURA PROCESSADA POR COMPUTADOR

SGS Moçambique, Lda  NUIT 4000003912    Rua do Bagamoyo No 322 19. Andar Maputo
t. + 258 21 313 488/90 f. + 258 21 313 499 www.sgs

11119
SECURITY NUMBER 0000

FORMS ALLIANZ (D11) 791-2437

# SGS

**FACTURA / INVOICE**    B0614

| PARA / TO : | **JERPINTA MOZAMBIQUE** | DATA / DATE | 14-Jul-08 |
|---|---|---|---|
| | Beira | CODIGO / CODE | 2100 |
| | | DIVISÃO / DIVISION | 20 |
| | **Mozambique** | DELEGAÇÃO / BRANCH | 2 |
| | | COMPANY CODE | • F 250101 |

| | | | | |
|---|---|---|---|---|
| CLIENTE / CLIENT REF. : | **Email from Cpt THEO dd 20.11.2007** | | | |
| SGS MOZ FILE NR. : | B/20/19/9488/07 | CERTIFICADO NR. / CERTIFICATE NR. | 2501 / | / 2008 |
| | | DE / FROM PLACE | PARA / TO PLACE | |
| MV / WHR : | MV MICHAEL M | | Beira | |
| LOCAL / PLACE : | Beira | DO DIA / FROM DATE | AO DIA / TO DATE | |
| | | 21.11.2007 | 22.11.2007 | |
| MERCADORIA / GOODS : | QUANTIDADE / QTY : | EMBALAGEM / PACKAGE : | | |
| STEEL | 3,003.70 | BARS | | |

| SERVICOS / SERVICES | TARIFA / RATE | UNIDADE / UNIT | VALOR / AMOUNT (Local Currency MT) |
|---|---|---|---|
| **Survey Investigation - MV MICHAEL M** | | | |
| • Examination of cargo holds/hatch covers | | Total time | |
| • Silver Nitrate tests conducted in cargo holds and on cargo remaining | 1,300.00+20% | 2 ½ Working Days | |
| remaining onboard to determine whether or not chlorides were present | $1,625.00 | $4,062.50 | 99,450.00 |
| • examination of cargo on quayside | | | |
| • conducting of Silver Nitrate tests on cargo on quayside | | | |
| • survey fees and report compilation | | | |

| DESPESAS/EXPENSES | TARIFA / RATE | UNIDADE / UNIT | VALOR / AMOUNT (Local Currency MT) |
|---|---|---|---|
| Airfair DUR/BEIRA/DUR | $1,532.94 | n/a | 37,526.40 |
| Petties/Out of pocket expenses ie. VISA/Meals etc. | $350.00 | n/a | 8,568.00 |
| Telephone/E-Mail/Mobile Phone | $75.00 | n/a | 1,836.00 |
| Cambio / Exchange Rate USD/Mt | | 24.48 | |

Prazo de pagamento / Payment conditions:  15 dias / days
Por cheque ou transferencia bancaria para : / by cheque or bank transfer to:
Conta bancária no. / bank account nr. :
STANDARD BANK USD - 101 / 015247 / 101 / 6

Praça 25 de Junho
MAPUTO-MOZAMBIQUE

**COSTS TO BE SHARED 50% BETWEEN OWNERS AND CARGO RECEIVERS**
instruction received from ...... Maritime USA, 15th Nov 2008

All orders are accepted and certificates issued subject to ......
SGS General Conditions for Inspection and Testing Services ......

FACTURA PROCESSADA POR COMPUTADOR

| | | | |
|---|---|---|---|
| SUBTOTAL | Mt | | 147,380.40 |
| IVA | | | |
| | Mt | | 73,690.20 |
| TOTAL | USD | | 3,010.22 |

SGS Moçambique, Lda  NUIT 400003912    Rua do Bagamoyo No 322 1º Andar ......
t +258 21 313 488/90 f + 258 21 313 49 ......

11120
SECURITY NUMBER 0000