BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
DELFINO MARITIME CORP.
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FERPINTA S.A., FERROCAMBO, and
BREFFKA & HEHNKE Gmbh & Co KG,          08 Civ. 5536 (SHS)

               Plaintiffs,

    -against-                                **SECOND DECLARATION OF
                                                          PANAGIOTIS CHIOTELIS IN
                                                          SUPPORT OF MOTION TO**
DELFINO MARITIME CORP.,                                   **DISMISS COMPLAINT AND
                                                          VACATE ATTACHMENT**

              Defendant.
------------------------------------------------------------X

      I, PANAGIOTIS CHIOTELIS, pursuant to Section 1746 of Title 28 of the United States

Code, hereby declare and say the following under penalty of perjury:

      1.     I am a resident of Piraeus, Greece, and a practicing attorney admitted to the bar of

Piraeus, Greece. I am also qualified as a solicitor in England and Wales. I have previously

submitted a Declaration dated 11 July 2008 in support of the Defendant's motion to dismiss the

complaint and vacate the attachment of Defendant's property. I make this additional declaration

in further support of Defendant's motion.

      2.     I would like, in particular, to reply to the statements made in the declaration dated

30th of July 2008 of Amir Sussman, a London-based attorney that acted for the Plaintiffs at the

time when key events were taking place concerning this dispute.

3.      As this Honorable Court will recall, I set forth in my initial declaration various facts and documents supporting Defendant's position that an agreement was reached on or about 13 November 2007 to have an SGS surveyor perform a final and binding survey of the steel cargo. Please see my Declaration dated 11 July 2008 at paras. 16 – 18, and my fax dated 13 November 2007 to Clyde & Co., labeled as "D-20" in Exhibit "D", in which I make clear to Mr. Sussman that the SGS surveyor would be instructed that his "findings would be final and binding."

4.      As also noted in my initial declaration, Mr. Sussman's response to my correspondence was not to reject the "final and binding" proposal set out in my 13 November 2007 fax. Instead, Mr. Sussman responded by requesting that the SGS surveyor be given additional instructions (on behalf of the plaintiffs) before performing the survey. Please see Mr. Sussman's fax dated 13 November 2007 labeled as "D-21" in Exhibit "D" of my initial declaration. As I also stated in my declaration, Mr. Sussman's additional instructions to the SGS surveyor were duly noted in the instructions given to the SGS surveyor the following day, 14 November 2007. Please see my fax dated 14 November 2007 to SGS, labeled as Exhibit "E" in my initial declaration.

5.      Not surprisingly, Mr. Sussman goes to great lengths to avoid a finding that the parties had agreed on 13 November 2007 to have an SGS surveyor perform a final and binding survey of the Cargo. Yet the only correspondence on which Mr. Sussman relies is his fax to me dated 16 November 2007 (marked "urgent") [Sussman Decl. Ex. "B-21-22], in which Mr. Sussman is now clearly trying to back away from the agreement reached just a few days earlier in our exchanges of 13th November.

2

6.      Mr. Sussman also makes much of my use of the word "draft" in my 14th November correspondence to him to which I attached proposed instructions to the SGS surveyor [Sussman Decl. para. 9]. Mr. Sussman now claims that this word precludes a finding that there was an agreement as of that date. Clearly, Mr. Sussman is wrong. The agreement to have a third, neutral surveyor perform a "final and binding" survey was made and accepted on the 13th of November, and any additional terms proposed by Mr. Sussman on behalf of his client were accepted by Defendant in my 14th November correspondence in which I confirmed Defendant's agreement to these additional terms.

7.      In fact, Mr. Sussman's declaration supports Defendant's position that an agreement was reached to have SGS perform a final and binding survey well before, but no later than, the 14th of November. For example, Mr. Sussman's declaration, at Exhibit B8 – B9, contains Defendant's response to the Plaintiffs' own agreement "to a third survey on the cargo to be done by independent surveyors SGS." Defendant's specific response was that "owner's (sic) hereby agree/accept SGS surveyor to attent (sic) the vessel for the inspection of the cargo on board at any time and to prepare their final survey report which to be accepted and bind (sic) by both parties (owners and cargo receivers)." There is simply nothing ambiguous about the nature of the parties' agreement.

8.      I would like to point out that Mr. Sussman does not actually mention or discuss his Exhibit B8. Moreover, Mr. Sussman's declaration appears to have deliberately omitted his own client's communication in which, as noted above, the Plaintiffs expressly agree to retain the SGS surveyor. Consequently, I am attaching hereto as Exhibit "1" *both* communications exchanged by the parties on the 7th of November 2007.

3

9.      Notably, Mr. Sussman does not dispute that the SGS survey actually took place, and that it was performed in conformity with the communications I describe herein and in my earlier declaration in support of the Defendant's motion.   Surely, had there been no agreement between the parties, Plaintiffs would not have allowed the SGS surveyors to enter Plaintiffs' premises to conduct any survey.

10.      I would also like to note that Plaintiffs' (and, indeed, Defendant) had every incentive and reason to enter into a final agreement concerning the condition of the Cargo.  The parties had already reached a final and binding agreement concerning atmospheric rust.  Please see my Declaration dated 11 July 2008 at para. 9 and Exhibit "B" annexed thereto.  At the discharge port, the Plaintiffs were anxious to have the Cargo discharged so that they could take delivery.  The agreement reached concerning a "final and binding" SGS survey not only resolved any remaining issues between the parties concerning cargo damage, but it also allowed the cargo to be discharged in an orderly manner without the parties asserting and threatening claims against each other.  See, for example, Mr. Sharma's (Plaintiffs' representative) statement in his 7 November 2007 email in which he specifically agrees to use the SGS surveyor and then asks Defendant to "please confirm that the cargo will now be discharged."  See Exhibit "1" annexed hereto.

11.      Mr. Sussman's references to the form of the SGS invoice are also unconvincing. The manner in which SGS prepared its invoice cannot be determinative of the parties' own intent as evidenced by the communications exchanged during the relevant time period.   The fact that SGS erred in addressing its invoices, and the fact that SGS has not yet "chased" Plaintiffs for their 50% payment, has no bearing whatsoever on the parties' earlier agreement concerning the "final and binding" nature of the survey.  In any event, I have already produced corrected copies

4

of the SGS invoices in which 50% of the cost of the SGS survey is billed to Plaintiffs and Defendant. Please see my Declaration dated 11 July 2008 at para. 20 and Exhibit "G" annexed thereto.

12.     Of course, if this Honorable Court accepts the SGS report as final and binding on the parties (per their agreement), than the current complaint must be dismissed since it is based purely on a claim of saltwater damage.

13.     Finally, I note Mr. Sussman's statement that "Plaintiffs are now preparing to commence arbitration in London" [Sussman Decl at para. 14]. Despite this representation and the substantial lapse of time since the Cargo was discharged, no steps have yet to be taken by the Plaintiffs to lodge their claim in London arbitration. The explanation for Plaintiff's inaction, I respectfully submit, is that Plaintiffs are simply trying to "squeeze" Defendant into a settlement by attaching Defendant's property in this Court. In my opinion, Plaintiffs' have no confidence in the actual merits of their claim and will never pursue London arbitration if this attachment is not upheld.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Piraeus, Greece
        August 5, 2008



PANAGIOTIS CHIOTELIS
ATTORNEY AT LAW
5 SACHTOURI STR. PIRAEUS 18536
TAX IDENTITY No: 16800142
PANAGIOTIS CHIOTELIS
FAX: +30 210 4294948 - Mobile



5



# EXHIBIT "1"



## Sea Wind Maritime SA

From:    Sea Wind Maritime SA [mikang@otenet.gr]
Sent:    Τετάρτη, 7 Νοεμβρίου 2007 17:20
To:       takis101@otenet.gr
Subject: Fw: MICHAIL M

TAKIS / THEO

GAFT,

FYI,

HAVE SENT FOLLOWING MESSAGE TO MR JAI SHARMA.

THNKS


----- Original Message -----
From: Sea Wind Maritime SA
To: Jai Sharma
Sent: Wednesday, November 07, 2007 5:18 PM
Subject: Fw: MICHAIL M


DEAR JAI / CAP THEO

GAFT,

                    *WITHOUT PREJEDUCE:*

REF: M/V MICHAIL M , SGS TO INSPECT THE CARGO ON BOARD.

YOUR FOLLOWING MESSAGE NOTED,THNKS.


OWNER'S  HEREBY AGREE / ACCEPT SGS SURVEYOR TO ATTENT THE VESSEL FOR
THE INSPECTION OF THE CARGO ON BOARD AT ANY TIME AND TO PREPARE
THEIR  FINAL SURVEY REPORT WHICH TO BE ACCEPTED AND BIND BY BOTH PARTIES
(OWNERS AND CARGO RECEIVERS).

IF THE SURVEY REPORT IS CLEARLY STIPULATE THAT  CARGO IS CLEAN AND
NOT CONTAMINATED BY SEA WATER AND IT IS ONLY ATHMOSPHARICALY RUSTED
THEN THE CARGO RECEIVERS AND THEIR INSURANCE COMPANY WILL CONFIRM  THAT
THEY WILL NOT ARREST OR PUT A LIEN OR DETAIN THE VESSEL IN BEIRA OR AT ANY
OTHER PORT(S) AT THE PRESENT TIME OR IN THE FUTURE.

IF THE REPORT IS CLEARLY STIPULATE THAT PART OF THE CARGO HAS BEEN  CONTAMINATED BY
SEA WATER THEN OWNERS IMMEDIATELY PROCEED TO DISCH THE CLEAN CARGO AND THE
DAMAGE
ONE WILL BE DISCHARGED SEPARATELY IN RECEIVER'S TERAIN OR IN THE PORT AND OWNERS
TO UNDERTAKE TO CLEAN THE CARGO BY HIGH PRESSURE WATER JET.

IF AFTER THAT  SGS 'S SURVEYOR  WILL FIND PART OF CARGO STILL
DAMAGED (PITTING/SCALLING)
 CREATED BY SEA WATER AND HIS FINALY REPORT CLEARLY STIPULATE  SO,THEN THE
OWNER'S WILL ACCEPT TO PAY TO THE  CARGO RECEIVERS FOR  THE DAMAGED CARGO.

④

PLEASE URGENT ADVISE / CONFIRM ORDER TO APPOINT SGS SURVEYOR COMPANY AND
TO SEND ON BOARD THEIR SURVEYOR.

AWAITING YRS
THNKS
BRGDS
CAP, THEO
----- Original Message -----
**From:** Jai Sharma
**To:** Sea Wind Maritime SA
**Cc:** filipe.soares@ferpinta.pt ; Ferpinta Dr. Nuno Pires
**Sent:** Wednesday, November 07, 2007 4:14 PM
**Subject:** MICHAIL M

Dear Captain Theo,

Please note that we are informed that the cargo owners are agreeable to a third survey on the cargo to be
done by independent surveyors SGS. Since the cargo is being discharged directly into trucks, they suggest
this is done at their premises which are 2.5km from the port.

Please confirm that the cargo will now be discharged.

Best regards
Jai Sharma

3/7/2008